28 June 1998

No. 2--98--0667

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, ) 

)

v. ) No. 98--CF--115

)

RANDY STORK, ) Honorable

) Christopher C. Starck,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:
 

Defendant, Randy Stork, appeals from his conviction of unlawful entry of school property by a child sex offender under former section 11--9.2 of the Criminal Code of 1961 (720 ILCS 5/11--9.2 (West Supp. 1997)) (the Act).
(footnote: 1)  Following a stipulated bench proceeding, defendant was found guilty and sentenced to 24-months' probation.  On appeal, defendant argues that section 11--9.3 is unconstitutional in that it (1) violates his right to procedural due process; (2) violates substantive due process by punishing innocent conduct; (3) is unconstitutionally vague; (4) criminalizes the status of being a former child sex offender, in violation of the eighth amendment (U.S. Const., amend. VIII); and (5) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11).  We affirm.

Initially, we must remark upon the inexcusable poor quality of the briefs filed by both parties.  They exhibit a lack of compliance with our supreme court rules.  Defendant's brief contains a statement of facts without any citations to the record.  The argument sections of both parties' briefs contain irrelevant arguments and misstatements of law.

Additionally, we note that the State's brief fails to comply with Supreme Court Rule 6.  145 Ill. 2d R. 6.  Rule 6 requires citation of cases to be to the official reports and to include the page of the volume where the case begins and the pages upon which the pertinent matter appears.  Many of the cases cited by the State lack references to the official reports' volume and page numbers upon which the pertinent matters appear.

The court is "entitled to have briefs submitted that present an organized and cohesive legal argument in accordance with Supreme Court Rules."  
Harvey v. Carponelli
, 117 Ill. App. 3d 448, 450 (1983).  Strict adherence to the supreme court rules is necessary to expedite and facilitate the administration of justice.  See 
Harvey
, 117 Ill. App. 3d at 450.  We admonish both parties for failing to comply with the supreme court rules.

I.  FACTS

In approximately 1989, in the State of Arizona, defendant was accused of inappropriate contact with his live-in girfriend's 15-year-old child.  Defendant pleaded guilty to attempted violation of a child, a Class 3 felony, and was sentenced to probation.  Defendant subsequently relocated to Illinois.

On January 12, 1998, defendant drove to Twin Groves Junior High School in Buffalo Grove.  Defendant parked in the school parking lot and proceeded directly to the school's front office, where he asked the school administrator for permission to distribute some of his business literature for "Rock 'N Rebel Productions."  Defendant's business was an entertainment disk jockey service providing music for private parties, school functions, and other occasions.

No signs were posted at the school forbidding entry to either the general public or those persons designated as former sex offenders.  The school doors were open and unlocked.  Defendant was not asked to leave the school or denied permission to be in the building.

After seeking permission of the school administrator to distribute business literature, defendant promptly left the school and drove away.  Defendant did not speak to any student, nor did he linger on the school grounds.

Defendant was charged by indictment with unlawful entry on school property by a child sex offender.  Defendant moved to dismiss the indictment on constitutional grounds, a motion that was denied by the trial court.  Defendant was then tried in a stipulated bench proceeding, found guilty, and sentenced to 24-months' probation.

Defendant timely appealed, arguing that section 11--9.3 is unconstitutional.  The constitutionality of section 11--9.3 has not previously been challenged.

II.  REVIEW OF SECTION 11--9.3

PRESENCE WITHIN SCHOOL ZONE BY CHILD SEX OFFENDERS PROHIBITED

On July 28, 1997, the Governor signed into law Public Act 90--

234 (Pub. Act 90--234, eff. January 1, 1998 (adding 720 ILCS 5/11--

9.2 (West Supp. 1997), which was renumbered to 720 ILCS 5/11--9.3  (Smith-Hurd Supp. 1999) by Public Act 90--655 (Pub. Act 90--655, §160, eff. July 30, 1998))).  Public Act 90--234 made it unlawful for a child sex offender knowingly to be present on school property or knowingly to loiter on a public way within 500 feet of school property while persons under the age of 18 are present, unless the offender is a parent or guardian of a student present on the school property, or the offender has permission to be present from the school principal, administrator, or school board.  720 ILCS Ann. 5/11--9.3(a), (b) (Smith-Hurd Supp. 1999).  A person who violates section 11--9.3 is guilty of a Class 4 felony.  720 ILCS Ann. 5/11-

-9.3(3)(d) (Smith-Hurd Supp. 1999).

The category of child sex offenders includes any person who is convicted of a sex offense, as defined by section 11--9.3(c)(2) (720 ILCS Ann. 11/9.3 (c) (2) (Smith-Hurd Supp. 1999)), or who is certified as a sexually dangerous person pursuant to the Sexually Dangerous Persons Act (725 ILCS 205/0.01 
et seq.
 (West 1996)).  720 ILCS Ann. 5/11--9.3(c)(1) (Smith-Hurd Supp. 1999)

III.  PROCEDURAL DUE PROCESS

Defendant contends that he has been deprived of his right to procedural due process because section 11--9.3 does not provide for prior notice to former child sex offenders that previously lawful conduct has been criminalized.  In order to trigger the protections of the due process clause, defendant must show that the statute at issue deprives him of a protected liberty or property interest.  
Lanni v. Engler
, 994 F. Supp. 849, 855 (E.D. Mich. 1998).  We do not believe that defendant has met this burden.

Defendant argues that he has a liberty interest in challenging his "child sex offender" label because it imposes a lifetime affirmative disability and restraint, thereby implicating substantial liberty interests.  Defendant contends that the Act "tramples his freedom to participate in any and all political, religious, commercial, or community events that happen to be based in a school."  Defendant further contends that the Act impairs his right to circulate business literature, thereby hindering his right to commercial speech.  Defendant also argues that he has a privacy interest in nondisclosure.  We find that defendant's arguments are speculative at best.

Section 11--9.3 merely prohibits a sex offender's presence within school zones unless the offender is a parent or guardian of a student present on the school grounds or the offender has permission to be present.  Contrary to defendant's arguments, there is no right, inherent or constitutional, to transact personal business within the limits of a public school.  See 
People v. Parker
, 208 Misc. 978, 138 N.Y.S.2d 2 (1955) (upholding constitutionality of a statute that prohibited loitering in public school buildings without permission).  Any injury to defendant is a result of his underlying conviction of a sex offense.  Defendant has failed to show that the statute at issue deprives him of a protected liberty or property interest.

Even if defendant could prove the deprivation of a liberty or property interest, his procedural due process claim must still fail.  Defendant argues that due process requires that child sex offenders be notified of the new statute by mail, or, in the alternative, a clearly-visible posting on the school doors or grounds forbidding the presence of child sex offenders.  We find no merit in defendant's argument.

It is a well-established principle that "one's ignorance of the law furnishes no exemption from criminal responsibility for his acts."  
People v. Cohn
, 358 Ill. 326, 331 (1934).  Nevertheless, citizens are entitled to fair warning of the punishment that the State may impose upon those who violate its laws.  See 
People v. Coleman
, 111 Ill. 2d 87, 93-94 (1986).  "The public is generally held to have notice of a bill's contents at the time the bill is passed in its final form."  
People v. Wickland
, 268 Ill. App. 3d 758, 762 (1994).  A law needs no promulgation to take effect, absent a constitutional provision stating that an act cannot take effect until it is published.  
Wickland
, 268 Ill. App. 3d at 762.

In this case, defendant committed the offense only 12 days after the effective date of the Act.  However, the text of the Act was available in published form well before the effective date of the law and well before defendant committed the offense.  See Pub. Act 90--234, eff. January 1, 1998, 1997 Ill. Legis. Serv. 2894-97 (West 1997). 

In 
Coleman
, the court held that a defendant who committed a driving-under-the-influence offense (DUI) seven months after the effective date of an amendment to an act had adequate notice of the provisions of the amendment.  
Coleman
, 111 Ill. 2d at 94.  In 
Wickland
, this court employed the reasoning of  
Coleman
 in holding that a defendant who committed  DUI 36 days after the effective date of an amendment to an act was deemed to have notice of the provisions of the amendment.  
Wickland
, 268 Ill. App. 3d at 762.  We apply the same reasoning here.  Defendant committed the offense 12 days after the effective date of the Act.  Considering this, together with the rules regarding when the public is deemed to have notice of the provisions of a law, requires that we reject defendant's procedural due process argument.

 IV.  SUBSTANTIVE DUE PROCESS

Defendant argues that section 11--9.3 violates substantive due process to the extent that it punishes innocent conduct in the absence of any culpable intent.  More properly stated, we find the issue to be whether the statute is an unreasonable and arbitrary exercise of the State's police power.  See 
People v. Wick
, 107 Ill. 2d 62, 65-66 (1985).  Defendant's argument is, in essence, that the statute is an unreasonable and arbitrary exercise of the State's police power because it is overly broad in that it proscribes conduct without requiring a culpable mental state.

The State's analysis in arguing that section 11--9.3 does not offend substantive due process because the statute does not constitute a penalty is completely inaccurate.  The State blatantly misapprehends the case law concerning substantive due process analysis.

Defendant erroneously states in his brief that the standard of review in this case is 
de novo
.  The rational-basis test is the proper standard of review for claims of a violation of substantive due process when the statute under consideration does not affect a fundamental constitutional right.  
People v. Lindner
, 127 Ill. 2d 174, 179 (1989).  In 
Wick
, 
the supreme court recognized the following:

"[T]he question of whether a legislative exercise of the police power meets the constitutional requirement of due process involves [1] identifying the public interest that the statute is intended to protect, [2] examining whether the statute 'bears a reasonable relationship' to that interest, and [3] determining whether the method used to protect or further that interest is 'reasonable.' "  
Wick
, 107 Ill. 2d at 66.

A.  IDENTIFYING THE PUBLIC INTEREST.

In identifying the public interest that section 11--9.3 is intended to protect, we have reviewed Public Act 90--234 as it was originally published under House Bill 157 (90th Ill. Gen. Assem., House Bill 157, 1997 Sess.), and we note that House Bill 157 included the following introductory statement:

"WHEREAS, [d]ue to the high recidivism rate of child sex offenders, the General Assembly finds and declares that the State has a special interest in protecting children who attend schools from child sex offenders ***."

We have also examined the legislative debates of Public Act 90--234, which was discussed in the Senate on May 14, 1997.  During the floor debate, Senator Hendon explained that the bill "would just make it harder for child sex offenders to be in the schools and get access to our children."  90th Ill. Gen. Assem., Senate Proceedings, May 14, 1997, at 11.  It is clear that section 11--9.3 was intended to protect school children from known child sex offenders.

B.  WHETHER SECTION 11--9.3 BEARS A "REASONABLE RELATIONSHIP" TO THE PUBLIC INTEREST INTENDED TO BE PROTECTED.

The next inquiry in our analysis is whether prohibiting child sex offenders from school zones bears a reasonable relationship to protecting school children from known child sex offenders.  We believe that it does.

In reviewing another statute that affects convicted sex offenders, the supreme court examined the constitutionality of the Habitual Child Sex Offender Registration Act (Ill. Rev. Stat. 1987, ch. 38, pars. 221 through 230) in 
People v. Adams
, 144 Ill. 2d 381 (1991).  In 
Adams
, the court considered the legislative debates of the registration act and found that the public interest was to aid law enforcement in the protection of children.  
Adams
, 144 Ill. 2d at 390.  The court determined that the statute served this purpose by providing ready access to information on known child sex offenders. 
 
Adams
, 144 Ill. 2d at 390.  The court found nothing unreasonable in the statute's method of serving its purpose.  
Adams
, 144 Ill. 2d at 390.  The court concluded by stating that "[t]here is a direct relationship between the disability, the registration of child sex offenders, and the purpose served by the statute, the protection of children."  
Adams
, 144 Ill. 2d at 391.  Likewise, it is apparent that prohibiting known child sex offenders from having access to children in schools, where they are present in large numbers, bears a reasonable relationship to protecting school children from such known child sex offenders.

C.  WHETHER THE METHOD USED IS "REASONABLE."

We must next examine whether the method used to protect or further the public interest is "reasonable."  Defendant, in essence, argues that the statute's method of serving its purpose is overly broad because it punishes innocent behavior without requiring a culpable mental state.

In interpreting a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute.  
Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund
, 155 Ill. 2d 103, 110 (1993).  In construing a statute, a court is obliged to affirm the statute's validity and constitutionality if reasonably possible.  
Harris v. Manor Healthcare Corp.
, 111 Ill. 2d 350, 363 (1986).  An interpretation that renders a statute valid is always presumed to have been intended by the legislature.  
Harris
, 111 Ill. 2d at 363. 

Section 11--9.3 provides that it is unlawful for a child sex offender to knowingly be present in a school zone "
unless the offender
 *** 
has permission to be present
."  (Emphasis added.)  720 ILCS Ann. 5/11--9.3(a)(2), (b)(2) (Smith-Hurd Supp. 1999).  We construe the statute to proscribe only conduct performed without permission, or, in other words, "without lawful authority."  By construing the statute to proscribe only conduct performed "without lawful authority," the possibility that the statute reaches innocent conduct is avoided.  See 
People v. Bailey
, 167 Ill. 2d 210, 224-25 (1995).

Section 11--9.3 serves its purpose by banning known child sex offenders from school zones, thus reducing the risk that school children will fall prey to sexual predators.  The unlawful presence within a school zone by child sex offenders applies to a specific class of persons, convicted child sex offenders.  If a group of persons creates a greater danger to the public, then it is reasonable to deter those persons by a statute reasonably designed to remedy the threat to the public safety.  See 
People v. Crawford
, 145 Ill. App. 3d 318, 322 (1986) (holding that unlawful-use-of-

weapons-by-felons statute is reasonably designed to remedy a threat to public safety and is not an arbitrary use of police power).  We find nothing unreasonable in the statute's method of serving its purpose and we therefore hold that section 11--9.3 does not violate defendant's substantive due process rights.

V.  VAGUENESS

Defendant next argues that the exemption in section 11--9.3(a)(2) for persons who have obtained "permission" from the school principal, administrator, or school board is vague as applied to him.  720 ILCS Ann. 5/11--9.3(a)(2) (Smith-Hurd Supp. 1999).  A statute violates due process when it forbids the doing of an act in terms so vague that persons of normal intelligence must guess at its meaning and differ as to its application.  
People v. Seefeldt
, 112 Ill. App. 3d 106, 107 (1983).  Statutes enjoy a strong presumption of constitutionality that "is not overcome unless the terms of the statute are so ill defined that their meaning will be ultimately determined by the opinions and whims of the trier of fact rather than any objective criteria."  
Seefeldt
, 112 Ill. App. 3d at 107.  When a statute does not define a term, the court will assume that the word has its ordinary and popularly understood meaning.  
Bailey
, 167 Ill. 2d at 229.  Webster's Dictionary defines "permission" to mean "the act of permitting," "formal consent," and "authorization."  Webster's Third New International Dictionary, 1683 (1993).

The court should also consider the legislative objective and the context in which the language is used.  See 
People v. La Pointe
, 88 Ill. 2d 482, 499-500 (1981).  The legislative objective to protect school children from known child sex offenders is plain enough.  Examining the context in which "permission" is used, the Act clearly prohibits a child sex offender from being present within a school zone "
unless
 the offender *** 
has permission
 to be present."  (Emphasis added.)  720 ILCS Ann. 5/11--9.3(a)(2), (b)(2) (Smith-Hurd Supp. 1999).

We find that the term "permission" in the statute, read to require that a child sex offender obtain permission before entering a school zone, is consistent with the plain and usual meaning of the word "permission," and in light of the legislative objective  and the context in which it is used.  We consider that a person of common intelligence and experience can discern, without difficulty, that the language "unless the offender has permission to be present" contemplates that permission be obtained prior to entering a school zone.

We also find no merit in defendant's argument that the statute allows arbitrary and discriminatory enforcement without any standards or guidelines governing the decision maker.  Section 11--9.3 does not attempt to entirely prohibit child sex offenders from school zones, but it confines its prohibitions to those child sex offenders who are not parents or guardians of children at the school and those without permission to be present.  The statute restricts child sex offenders from a readily identifiable area, such as the school building or a public way within 500 feet of school property.  Furthermore, the statute is limited to those times when persons under the age of 18 are present within the school zone.  We believe these items provide objective criteria in the statutory proscription that lack the potential for arbitrary and discriminatory enforcement.

Section 11--9.3 did not prevent defendant from entering the school altogether but merely prohibited him from doing so unless certain conditions specified therein were met.  He did not meet these conditions.  Defendant was not a parent or legal guardian of a pupil in attendance at the school, nor was he authorized by school authorities to enter the premises.  Thus, the standards or guidelines governing the discretion of the school official in deciding whether a child sex offender is granted permission to enter a school zone are not applicable to defendant.  For the foregoing reasons, we hold that section 11--9.3 is not unconstitutionally vague as applied to defendant.

VI.  STATUS OF OFFENDER

Defendant next argues that section 11--9.3 criminalizes the status of being a former child sex offender, in violation of the eighth amendment prohibition against cruel and unusual punishment (U.S. Const., amend. VIII).  Defendant contends that the statute subjects convicted child sex offenders to greater sanctions because it requires them to be branded or "labeled" child sex offenders for life.

To analyze the validity of a statute based upon an eighth amendment claim of cruel and unusual punishment, the purpose of the statute should be evaluated in order to determine whether it is penal in nature.  
Adams
, 144 Ill. 2d at 387, citing 
Trop v. Dulles
, 356 U.S. 86, 96, 2 L. Ed. 2d 630, 639, 78 S. Ct. 590, 595 (1958).  The severity of the disability as well as all the circumstances surrounding the legislative enactment may also be relevant factors in concluding whether a disability is penal.  
Adams
, 144 Ill. 2d at 387, citing 
Trop
, 356 U.S. at 96, 2 L. Ed. 2d at 639-40, 78 S. Ct. at 595-96. 

In 
Adams
, the supreme court rejected an eighth amendment argument with regard to the Habitual Child Sex Offender Registration Act (Ill. Rev. Stat. 1987, ch. 38, pars. 221 through 230 (now codified, as amended, at 730 ILCS 150/2 through 10)), holding that the registration requirement did not constitute cruel and unusual punishment.  
Adams
, 144 Ill. 2d at 389.  In so ruling, the supreme court noted that the legislative history of the registration act indicated that its purpose was to protect children and was therefore nonpenal.  
Adams
, 144 Ill. 2d at 387.  The court explained that the registration requirement was not severe in comparison to the potential alternative of spending an extended period of time in prison.  
Adams
, 144 Ill. 2d at 387-88.  The court concluded that the registration act did not constitute cruel and unusual punishment under the eighth amendment.  
Adams
, 144 Ill. 2d at 389.

Like the Habitual Child Sex Offender Registration Act, the purpose of section 11--9.3 is to protect children.  The disability imposed by section 11--9.3 is less than severe.  It simply requires child sex offenders to obtain permission before entering school zones.

The circumstances surrounding the enactment of section 11--9.3 reveal a legislature concerned with the high recidivism rate of child sex offenders and protecting children from sex offenses.  As the court noted in 
Adams
, "Aside from the education of the children themselves, the most logical alternative available to the legislature was to monitor the movements of the 
perpetrators ***."
  
Adams
, 144 Ill. 2d at 388.  Likewise, we find that the most logical alternative available to the legislature in this case was to limit access to school children by  perpetrators.  Section 11--9.3 serves this purpose.  We hold that section 11--9.3 does not violate defendant's eighth amendment rights.

VII.  PROPORTIONATE PENALTY

We next consider whether section 11--9.3 violates the proportionate penalties clause of our State Constitution (Ill. Const. 1970, art. I, §11).  Defendant argues that section 11--9.3 violates the proportionate penalties clause because (1) it prescribes a penalty that is grossly disproportionate to penalties for other equally or more serious offenses, and (2) it prescribes a penalty that is grossly disproportionate to the level of culpability required to commit the offense itself.

Defendant employs a cross-comparison analysis to argue that the penalty prescribed under section 11--9.3 (a Class 4 felony) is disproportionate when compared with the offenses of violation of an order of protection, criminal sexual abuse, aggravated assault, battery, battery of an unborn child, and willfully endangering the life or health of a child (misdemeanors).  Cross-comparison analysis involves a two-step inquiry: (1) whether the purposes of the compared offenses are "distinct such that comparative proportionality review is not appropriate"; and (2) if the purposes are "related," whether the offense with the harsher penalty is more serious than the offense with the less severe penalty.  
People v. Davis
, 177 Ill. 2d 495, 506 (1997).

Here, defendant ignores the first step of the analysis and simply begins a comparison of various statutes.  Absent a showing that the purposes of these statutes are related, defendant's comparison cannot establish a violation of the proportionate penalties clause.  
People v. Lombardi
, 184 Ill. 2d 462, 476 (1998).  "[I]t is inappropriate to compare offenses and their penalties unless they have common statutory purposes."  
Lombardi
, 184 Ill. 2d at 476.  Furthermore, if offenses have different purposes, the court presumes that the legislature considered different factors in establishing the penalties for those offenses and, therefore, the court must defer to the judgment of the legislature.  
Lombardi
, 184 Ill. 2d at 476.

In making his comparisons, defendant fails to acknowledge that section 11--9.3 applies only to those persons who have previously been convicted of a sex offense pursuant to section 11--9.3(c).  The offenses used in defendant's comparisons do not involve prior convictions, nor is the purpose of those statutes to protect children from known child sex offenders.  Therefore, defendant's comparisons are unrelated and invalid.

   The comparison we find related to section 11--9.3, and more appropriate for this cross-comparison analysis, is section 10 of the Sex Offender Registration Act (730 ILCS 150/10 (West 1996)).  As noted earlier, the purpose of the Habitual Child Sex Offender Registration Act (now the Sex Offender Registration Act (730 ILCS 150/1 
et seq.
 (West 1996)) was to protect children from known sex offenders.  Likewise, the purpose of section 11--9.3 is to protect children from known sex offenders.  The purposes of these two statutes are not only "related"; they are identical.  Both statutes provide for a similar penalty, in that a person who violates either statute is guilty of a Class 4 felony.  We therefore hold that the penalty prescribed by section 11--9.3 is not disproportionate to the penalties for similar offenses.

Defendant also argues that a felony conviction is too harsh a penalty for the level of culpability required to commit the offense itself.  We note, however, that the penalty for a violation of this statute is simply a collateral consequence of this defendant's earlier sex offense conviction.  Section 11--9.3 creates a duty for sex offenders to stay away from school property without permission, much like the statute prohibiting unlawful use or possession of weapons by felons creates a duty for convicted felons not to use or possess weapons.  The legislature has determined that these persons pose a danger to the public in both instances and has established penalties for these offenses based on their consideration of various factors.  We therefore defer to the legislature and hold that a felony conviction is not disproportionate to the level of culpability required to commit the offense itself and, thus, does not violate the proportionate penalties clause.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

COLWELL and THOMAS, JJ., concur.

FOOTNOTES
1:     
  The First 1998 General Revisory Act renumbered the Act prohibiting presence within school zones by child sex offenders from 720 ILCS 5/11--9.2 to 720 ILCS 5/11--9.3 (Pub. Act 90--655, §160, eff. July 30, 1998).  To avoid future confusion, this opinion reflects the renumbering of the Act.