THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WESLEY G. DIESTELHORST, Defendant-Appellant.

Fifth District    No. 5—02—0218

Opinion filed December 16, 2003.—Rehearing denied January 16, 2004.

1173

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James Roberts, State's Attorney, of Hillsboro (Norbert J. Goetten, Stephen E. Norris, and Trent M. Marshall, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a bench trial in the circuit court of Montgomery County, the defendant, Wesley G. Diestelhorst, a convicted child sex offender, was convicted of three counts of improper approaching, contacting, or communicating with a child within a public park zone by a child sex offender in violation of section 11—9.4(a) of the Criminal Code of 1961 (the Code) (720 ILCS 5/11—9.4(a) (West 2000)). The defendant was sentenced to concurrent, six-year, extended-term sentences in the Department of Corrections on counts I and II. No sentence was imposed on count III, because the trial court found that it was based upon the same physical act as count II. On appeal, the defendant argues (1) that the charges against him are fatally defective because only the conclusory language of the statute is recited, (2) that he was denied his right to a preliminary hearing on a superceding information, (3) that he was not proven guilty beyond a reasonable doubt of any of the three charges, (4) that section 11—9.4(a) of the Code is

unconstitutionally broad, (5) that he was denied a fair trial due to the ineffective assistance of his counsel, (6) that the three alleged acts for which he was convicted are parts of a single act rather than separate acts, and (7) that the sentence imposed is excessive and should be reduced to time served. We affirm.

## FACTS

The defendant has multiple convictions for child sexual offenses. In 1985 a Montgomery County jury found the defendant guilty of one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14 (now see 720 ILCS 5/12—14 (West 2002))) for sexually penetrating a male child under the age of 13 and three counts of indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4 (now see 720 ILCS 5/12—12 *et seq.* (West 2002))) for performing various sexual acts with a female child under the age of 16. The defendant received a prison sentence of 20 years and served approximately 10 years in the Department of Corrections for these convictions. In 1996, the defendant was charged with three counts of child abduction and ultimately pled guilty to one count of child abduction (720 ILCS 5/10—5(b)(10) (West 1996)) for luring or attempting to lure a child under the age of 16 into a motor vehicle. The defendant received a sentence of three years in the Department of Corrections.

█ Pursuant to section 11—9.4 of the Code, effective January 1, 2000, it became illegal for child sexual offenders to interact with children in public parks. The statute provided in pertinent part as follows:

"Approaching, contacting, residing, or communicating with a child within public park zone by child sex offenders prohibited.

(a) It is unlawful for a child sex offender to knowingly be present in any public park building or on real property comprising any public park when persons under the age of 18 are present in the building or on the grounds and to approach, contact, or communicate with a child under 18 years of age, unless the offender is a parent or guardian of a person under 18 years of age present in the building or on the grounds." 720 ILCS 5/11—9.4(a) (West 2000). A person who violates section 11—9.4(a) is guilty of a Class 4 felony. 720 ILCS 5/11—9.4(e) (West 2000).

This is not the first time the defendant has been charged with a violation of the above statute. On April 3, 2001, the defendant drove a truck to a park in Montgomery County and parked near a ball field where a girls' high school team was holding practice. The defendant exited the truck but left loud music playing. He went to the ball field and made comments to the girls, such as "nice catch." After the girls complained to their coach that the defendant was interfering with

their practice, the defendant was charged with violating sections 11—9.4(a) and 11—9.4(b) of the Code (720 ILCS 5/11—9.4(a), (b) (West 2000)).

On May 1, 2001, the defendant was charged with another violation of section 11—9.4(a) of the Code after he interfered with a boys' high school baseball practice. That charge emanated from the defendant's actions on the evening of April 29, 2001. At that time, the defendant drove his mother's truck to Raymond Park and parked it near a ball diamond where a high school boys' team was holding practice. The defendant blasted music from the truck as he watched the practice. The defendant also shagged foul balls and kept a running commentary going with the players, saying such things as "that was beautiful" and "that's the spot." At one point, a player dropped his glove to retrieve a ball that had gone over the fence, and the defendant picked up the glove, forcing the player to have to recover his glove from the defendant.

Prior to the start of a trial on any of the above-described charges, defense counsel filed a motion to dismiss on the basis that section 11—9.4(a) is unconstitutionally vague because the terms "approach," "contact," and "communicate" are not defined by the statute. The trial court denied the defendant's motion to dismiss and found that the statute is not void for vagueness. The first two charges centering around the events of April 3, 2001, proceeded to a trial in September 2001. Ultimately, the defendant was acquitted of both charges arising from the events surrounding the girls' softball practice. The defendant was not so lucky in the instant case.

In November 2001, the State filed an amended information concerning the events surrounding the boys' baseball practice. The original information had charged the defendant with only one count and alleged that the defendant "communicated with a child" in violation of section 11—9.4(a). Count I of the amended information recited the original charge based upon communication with a child and added "alternate charges of the same statute." Count II alleged that the defendant violated section 11—9.4(a) when he "approached" a child, and count III alleged that the defendant violated section 11—9.4(a) when he "contacted" a child.

At a pretrial hearing on May 2, 2002, the trial court stated that there was no need to conduct a preliminary hearing on the two additional counts in the amended information. The trial court then asked for the parties' thoughts on the matter. The State agreed, noting that the additional charges did not "create any substantial or new issues that would catch the defendant by surprise" and did not change the manner in which the State would proceed in attempting to prove the

charges. Defense counsel stated, "I would just for the record[—]would indicate that I think at least two of these are new charges[,] and I would submit that there should be a preliminary hearing." Defense counsel did not claim that a preliminary hearing was necessary in order to properly prepare a defense. The trial court concluded that a preliminary hearing was not necessary, and the cause proceeded to a bench trial.

The parties stipulated that the defendant's actions had occurred in a public park and that the defendant "was not the parent or guardian of any of the persons under 18 years of age present on the park grounds." The State offered the testimony of Dennis Matli, the coach of the boys' baseball team, M.M., a 16-year-old team member, Todd Brown, a member of the team who was 18 years old at the time of the trial, and B.W., a 16-year-old team member.

Coach Matli recalled that on the evening of April 29, 2001, his team, which was comprised of 15- to 17-year-old males, was practicing at a baseball field. The defendant drove up in a pickup truck with music playing loudly. Matli told the team to ignore the defendant. The defendant walked back and forth between his parked truck and various areas around the field. Matli saw the defendant sitting on the bleachers behind home plate, walking around the dugouts, and standing by the fence. At one point, some of the players were hitting foul balls over a fence, and the defendant retrieved the balls and threw them back to the players. Matli did not have direct contact with the defendant, nor did he see him have direct contact with the players.

M.M. testified that he was 16 years old on the date when the alleged events occurred. M.M. recalled that the defendant "[p]ulled up in his truck with his radio blaring[,] causing attention to himself." He also drew attention to himself by sitting on the bleachers and making comments on the game, such as "nice hit" and "good try." M.M. testified that the defendant talked directly with one of his friends, B.W. M.M. could not hear what the defendant said to B.W., but he saw him talking to B.W. M.M. said that this occurred when B.W. went to shag a foul ball that had gone over a fence. In order to retrieve the ball, B.W. dropped his baseball glove and jumped over the fence. The defendant picked up the glove and then gave it back to B.W. by the fence line. M.M. noted that the defendant and B.W. were close enough that the defendant could hand the glove back to B.W.

Todd Brown was also practicing at the park on the night in question and corroborated the testimony of M.M. regarding the defendant's actions and his commentating on the game. He also witnessed the glove exchange between B.W. and the defendant. Brown said that B.W. and the defendant were only a "[c]ouple feet" apart when the

exchange was made. He said it looked like the defendant said something to M.M., but Brown was too far away to hear anything.

B.W. testified that the defendant arrived at the park with music blaring from his truck. The defendant then proceeded to pace the right field line, sit behind the backstop on bleachers, and comment upon the team's batting practice. At one point, B.W. was behind the backstop retrieving foul balls. A ball went over the fence and B.W. dropped his glove and jumped over the fence to retrieve the errant ball. After B.W. retrieved the ball, he turned around and saw the defendant wearing his glove. The defendant then stated directly to B.W., "Look, I found a glove." B.W. told the defendant that it was his glove. B.W. retrieved another ball that had sailed over the fence. On his way back, he met the defendant at the gate and the defendant handed him the glove. B.W. testified that he was an arm's length away from the defendant during the exchange. B.W. said the defendant remained at the park until approximately 8:15 p.m., when the practice ended.

The defendant testified on his own behalf that on the date in question he was out for a drive when he noticed an organized baseball practice in the park and decided to stop and watch. He admitted that he went back and forth between his truck and different areas around the baseball field. At one point, he was sitting in his truck and heard a train, so he got out of his truck to watch the train. As he got near a gate, he noticed a baseball glove lying on the ground and thought someone might have lost it. After he picked it up to look at it, he heard B.W. say either "That's mine" or "That's my glove." He testified that B.W. then walked toward him, took the glove out of his hand, and went back to his baseball practice. The defendant walked through the gate and watched the train. The defendant denied saying anything to B.W. or to anyone else at the park. He said he made some comments to himself, but they were not directed toward anyone.

After hearing all the evidence, the trial court found the defendant guilty on all three counts. At the sentencing hearing, the trial court noted that it would enter a judgment on counts I and II only, because counts II and III were based upon the same physical act. The trial court found the defendant to be a threat to the community, and the court sentenced the defendant to concurrent, six-year, extended-term sentences on counts I and II. The defendant filed a motion to reconsider and a motion for the reduction of the sentences, which the trial court denied. The defendant now appeals.

## ANALYSIS

### I. Charging Instrument

The defendant first contends that the charges against him are

fatally defective because the information alleged only the conclusory language of the statute, rather than particular acts. The defendant insists that he was not told which acts he allegedly committed amounted to a communication, an approach, or a contact and that, therefore, he was unable to properly prepare a defense and now fears future prosecution arising from the same conduct for which he was found guilty. We disagree.

■ The Code of Criminal Procedure of 1963 provides that a criminal charge must allege the offense committed by setting forth the nature and the elements of the offense charged. 725 ILCS 5/111—3(a)(3) (West 2000); *People v. Smit*, 312 Ill. App. 3d 150, 151, 726 N.E.2d 62, 63 (2000). The relevant inquiry is not whether the alleged offense could have been described in greater detail but whether there is sufficient particularity to allow the accused to prepare a proper defense. *Smit*, 312 Ill. App. 3d at 151, 726 N.E.2d at 63-64. When an indictment is attacked for the first time on appeal, as it is here, it is sufficient if it "apprise[d] the defendant of the precise offense charged with sufficient specificity to enable him to prepare his defense and allow the pleading of the judgment as a bar to future prosecution arising out of the same conduct." *People v. Gilmore*, 63 Ill. 2d 23, 28-29, 344 N.E.2d 456, 460 (1976).

Set forth in the language of section 11—9.4(a) of the Code, count I of the information charged the defendant with unlawful presence within a public park. Count I alleged:

> "[The defendant] was knowingly present on real property comprising a public park *** when persons under 18 years of age were present on the park grounds and [the defendant] communicated with B.W., a child under 18 years of age, at the time when [the defendant] was not a parent or guardian of any of the persons under 18 years of age present on the grounds."

Counts II and III made the same allegations, except the word "communicated" is supplanted by the word "approached" in count II and the word "contacted" in count III.

■ An indictment may incorporate the statutory language of the charge as long as it describes with reasonable certainty the type of conduct alleged. *People v. Wisslead*, 108 Ill. 2d 389, 394, 484 N.E.2d 1081, 1083 (1985). An information charging an offense of lewd fondling or touching, worded in substantially the same language as the statute, is sufficient and does not have to specify the particular acts that constitute the crime. *People v. Bradley*, 128 Ill. App. 3d 372, 378, 470 N.E.2d 1121, 1126 (1984). Likewise, we find that the instant information was sufficient to inform the defendant of the nature of the charges against him.

■ In making a determination on appeal on whether or not the information is sufficient, we are allowed to consider the record. *Gilmore*, 63 Ill. 2d at 30, 344 N.E.2d at 460. The record before us belies the defendant's claim that he was unable to prepare a defense. In his testimony, the defendant specifically denied speaking to, approaching, or contacting B.W. The defendant testified that he was on his way to watch an approaching train when he noticed a baseball glove lying on the ground. As soon as he picked it up, he heard B.W. say that it was his glove. The defendant was quick to point out that B.W. walked toward him and "took the glove out of [his] hand." A review of the defendant's testimony shows that he attempted to set forth the proper defense, namely, that he did not approach, communicate, or have any contact with B.W. In effect, the defendant testified that any contact between him and B.W. was, at worst, inadvertent on his part.

We have reviewed the cases cited by the defendant in support of his contention that the information was insufficient. We are unconvinced. The cases cited by the defendant are distinguishable because in all those cases the offenses charged were such that additional clarification or specific words were necessary to set forth the alleged crime with sufficient specificity. See, *e.g.*, *People v. Davis*, 281 Ill. App. 3d 984, 668 N.E.2d 119 (1996) (the defendant was charged with official misconduct). Here, we believe that the information couched in the terms of section 11—9.4(a) was sufficient to inform the defendant of the precise offenses with which he was charged and allowed him to prepare a defense. Moreover, the information clearly states the time and the date of the alleged offenses and, therefore, acts as a bar to any future prosecutions arising out of the defendant's actions at the boys' baseball practice on the date and time in question.

## II. Preliminary Hearing

■ The defendant argues that he was denied his right to a preliminary hearing on the superceding information. As the State points out, however, the defendant waived this issue by failing to raise it in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30 (1988). Even assuming *arguendo* that the defendant did not waive this issue, we find no error in the trial court's decision not to conduct another preliminary hearing.

If a defendant is charged with a felony by information, the accused is entitled to a preliminary hearing to determine whether probable cause exists to believe that the accused committed the crime. 725 ILCS 5/111—2(a) (West 2000). Section 111—2(f) of the Code of Criminal Procedure of 1963 allows the State to amend an information to charge additional offenses arising out of the same transaction or oc-

currence without conducting another preliminary hearing. 725 ILCS 5/111—2(f) (West 2000). A preliminary hearing is not a trial and is not intended to be a discovery proceeding; rather, it is a proceeding connected to charging a defendant by an information in order to determine probable cause. *People v. Blackman*, 91 Ill. App. 3d 130, 132, 414 N.E.2d 246, 247 (1980).

Here, a preliminary hearing was held on May 17, 2001, on the State's original information, charging that the defendant "communicated with a child under 18 years of age." The State called only one witness, Chief of Police Jim Engelman. Engelman described the incident involving the boys' baseball team. Engelman did not testify that the defendant actually spoke with B.W. Engelman's testimony revealed only that B.W. told the defendant it was his glove and then retrieved the glove from the defendant. After Engelman testified, defense counsel argued that the testimony failed to show that the defendant communicated with a child under the age of 18. The trial court disagreed and found probable cause. Thereafter, the State filed an information adding two counts based upon the same statute, but this time for improperly approaching and contacting B.W.

After careful consideration, we agree with the State that the two additional charges arose out of the same occurrence and pertained to the same conduct that formed the basis of the first information. We find nothing in the record before us to indicate that another preliminary hearing was warranted. We disagree with the defendant's assertion that a new preliminary hearing was warranted because during the first preliminary hearing there was no indication that the defendant actually talked to B.W. The purpose of the preliminary hearing was only to determine whether there was probable cause to believe that a crime had been committed, not to conduct a trial. The State was not required to produce all the evidence it planned to produce at the trial. *Blackman*, 91 Ill. App. 3d at 132, 414 N.E.2d at 247. We find no error in the trial court's refusal to conduct an additional preliminary hearing on the superceding information.

### III. Due Process

The defendant asserts that he was not proven guilty beyond a reasonable doubt of any of the three charges because his actions were innocent and insignificant and none of his actions amounted to a criminal level of communication, approach, or conduct. In effect, the defendant argues that section 11—9.4(a) violates substantive due process because it punishes innocent conduct in the absence of any culpable intent. The defendant also contends there was no proof he knew that anyone was under the age of 18.

■ In *People v. Wick*, 107 Ill. 2d 62, 481 N.E.2d 676 (1985), the Illinois Supreme Court outlined the test for whether a legislative exercise of police power meets constitutional requirements:

> "[T]he question of whether a legislative exercise of the police power meets the constitutional requirement of due process involves [1] identifying the public interest that the statute is intended to protect, [2] examining whether the statute 'bears a reasonable relationship' to that interest, and [3] determining whether the method used to protect or further that interest is 'reasonable.'" *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678.

After careful consideration, we find that section 11—9.4(a) does not violate substantive due process.

■ It is clear from a reading of the statute that section 11—9.4(a) is intended to protect children from known sex offenders, who have a notoriously high recidivism rate. See *People v. Stork*, 305 Ill. App. 3d 714, 721, 713 N.E.2d 187, 192 (1999). Section 11—9.4(a) prohibits known child sex offenders from approaching, contacting, or communicating with a child within a public park zone, unless the child sex offender is a parent or guardian of a child under the age of 18 and that child is present, thereby reducing the risk that children in the park will become victims of the known child sex offender. We must consider whether prohibiting child sex offenders from approaching, contacting, or communicating with a child in a public park bears a reasonable relationship to protecting children from known sex offenders. We find that it does.

A court must ascertain and give effect to the legislature's intent in enacting a statute. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110, 610 N.E.2d 1250, 1253 (1993). In construing a statute, a court has a duty to affirm the statute's validity and constitutionality if reasonably possible. *Collins*, 155 Ill. 2d at 110, 610 N.E.2d at 1253. An interpretation that renders a statute valid is always presumed to have been intended by the legislature. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 363, 489 N.E.2d 1374, 1379 (1986).

In *Stork*, the Second District examined the constitutionality of section 11—9.3 of the Code (720 ILCS 5/11—9.3 (West 1998)), which makes it unlawful for a child sex offender to be present on school grounds or within 500 feet of school property unless the offender is a parent or guardian of a student present on school grounds or the offender has permission to be present. The *Stork* court concluded that prohibiting known child sex offenders from having access to children in schools bears a reasonable relationship to protecting school children from known sex offenders. *Stork*, 305 Ill. App. 3d at 722, 713 N.E.2d

at ·193. Likewise, we believe that prohibiting known child sex offenders from approaching, contacting, or communicating with a child within a public park zone bears a reasonable relationship to protecting children from known sex offenders. As the *Stork* court pointed out, "If a group of persons creates a greater danger to the public, then it is reasonable to deter those persons by a statute reasonably designed to remedy the threat to the public safety." *Stork*, 305 Ill. App. 3d at 722, 713 N.E.2d at 193.

Section 11—9.4(a) does not prohibit a known child sex offender from being present in a public park and enjoying its amenities. It prohibits the offender from approaching, contacting, or communicating with a child under the age of 18. The statute does, however, make an exception for a known child sex offender who is a parent or guardian of a person under the age of 18. Section 11—9.4(a) is reasonably designed to remedy a threat to public safety caused by known sex offenders. We do not find that section 11—9.4(a) is overly broad, nor do we find that it violates the defendant's substantive due process rights.

## IV. Reasonable Doubt

■ The relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have reasonably found the essential elements of the crime beyond a reasonable doubt. *People v. Oaks*, 169 Ill. 2d 409, 457-58, 662 N.E.2d 1328, 1349-50 (1996). A conviction should only be reversed if the evidence is so improbable, unreasonable, or unsatisfactory that it raises a reasonable doubt concerning the defendant's guilt. *People v. Easley*, 288 Ill. App. 3d 487, 494, 680 N.E.2d 776, 782 (1997).

■ In the instant case, the evidence revealed that the defendant has multiple convictions for child sexual offenses, including sexual penetration of a male child under the age of 13. The defendant also pled guilty in 1996 to one count of child abduction for luring or attempting to lure a child under the age of 16 into a motor vehicle. Less than a month before the incident in question, the defendant was charged with violations of sections 11—9.4(a) and (b) for a similar incident involving a girls' high school team. While the defendant was ultimately acquitted on those charges, the defendant's history shows an alarming pattern of offenses against children.

On the day in question, a high school boys' baseball team was conducting practice in the park when the defendant drove his mother's truck into the park, parked it near the ball diamond, and left the music blaring. The coach testified that he told his team to ignore the defendant, who walked from one area to the next and made comments about the game. B.W., age 16, testified that he dropped his ball glove

and jumped over a fence to retrieve a foul ball. While B.W. was retrieving the ball, the defendant picked it up and then told B.W., "Look, I found a glove," or words to that effect. When the glove exchange occurred, B.W. and the defendant were only an arm's length apart. The trial judge, who was the trier of fact in this case, noted for the record that a "reasonable person would know" that B.W. and M.M. were younger than 18 at the time of the incident. B.W. and M.M. were both 16 on the day in question. While the defendant argues that he was simply watching a baseball game, the record indicates that his conduct was not so innocuous. The record shows that the defendant made numerous attempts to draw attention to himself and make contact with members of the baseball team. After reviewing the record as a whole, we cannot say the evidence was so improbable, unreasonable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt.

## V. Vagueness

The defendant contends that the statute is vague and must be found unconstitutional. We disagree.

"A statute violates due process when it forbids the doing of an act in terms so vague that persons of normal intelligence must guess at its meaning and differ as to its application. [Citation.] Statutes enjoy a strong presumption of constitutionality that 'is not overcome unless the terms of the statute are so ill defined that their meaning will be ultimately determined by the opinions and whims of the trier of fact rather than any objective criteria.' [Citation.] When a statute does not define a term, the court will assume that the word has its ordinary and popularly understood meaning." *Stork*, 305 Ill. App. 3d at 723, 713 N.E.2d at 193-94.

Any doubts are construed in favor of upholding the statute. *People v. Cochran*, 323 Ill. App. 3d 669, 675, 753 N.E.2d 1155, 1161 (2001). Determining whether a statute is void for vagueness is made in the factual context of each case. *People v. Falbe*, 189 Ill. 2d 635, 639, 727 N.E.2d 200, 204 (2000).

Webster's Dictionary (Webster's) defines the term "approach" as "to come or go near or nearer to in place or time." Webster's Third New International Dictionary 106 (1986). Webster's definitions for "contact" include "to make connection with [or] get in communication with." Webster's Third New International Dictionary 490 (1986). Webster's defines "communicate" as "to make known[,] inform a person of[,] [or] convey the knowledge or information of." Webster's Third New International Dictionary 460 (1986).

While Webster's gives additional definitions for the terms in question, we do not find that the statute in question is unconstitution-

ally vague. "[A]n act is not unconstitutionally vague merely because one can conjure up a hypothetical which brings the meaning of some terms into question." *In re R.C.*, 195 Ill. 2d 291, 299, 745 N.E.2d 1233, 1239 (2001). The defendant contends that innocent actions, such as observing a ball game or walking past a child, are made felonies under section 11—9.4(a). However, we find that the terms are sufficiently clear to put the defendant on notice regarding what conduct is proscribed by section 11—9.4(a).

In support of our determination, we rely on *People v. Jamesson*, 329 Ill. App. 3d 446, 768 N.E.2d 817 (2002). In that case, the word "contact" in a statute prohibiting unlawful contact with a street gang member (720 ILCS 5/25—1.1 (West 1998)) was found not to be unconstitutionally vague. Here, the defendant was found guilty of three separate counts, but a judgment was only entered on count I (communicating) and count II (approaching) because the trial court determined that count II and count III (contacting) were based upon the same physical act. The terms in question are sufficiently definite so that the defendant knew that he should not approach or initiate any communication with a child under the age of 18. The defendant's previous convictions classify him as a child sex offender. The statute is clear that child sex offenders should have no contact with children under the age of 18 in a public park, unless the offender is a parent or guardian of a child under the age of 18. The defendant does not fall under the exception.

Moreover, we agree with the State that because section 11—9.4(a) applies only to child sex offenders present in public parks without children of their own, the statute does not lend itself to arbitrary and discriminatory enforcement. Prohibiting child sex offenders from approaching, contacting, or communicating with children in public parks, where they are often present, bears a reasonable relationship to protecting children from known sex offenders. A person with common intelligence and experience should easily be able to discern that a known sex offender should stay far away from children under the age of 18. Accordingly, we find that section 11—9.4(a) is not void for vagueness.

## VI. Ineffective Assistance of Counsel

The defendant argues he was denied a fair trial due to the ineffective assistance of counsel because his lawyer, *inter alia*, failed to confront witnesses with their prior inconsistent statements, failed to object to the vague charges, and failed to move for a bill of particulars or hold the State to its expressed theory of the case. We are unconvinced.

██ The general rule is that to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's substandard representation so prejudiced the defendant that he was denied a fair trial. *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984), citing *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). To show actual prejudice, a defendant must establish the following: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

██ The defendant first contends that counsel was ineffective for failing to confront B.W. with his pretrial statements, which did not mention that the defendant actually spoke to B.W., and for failing to seek to introduce B.W.'s written statement, which was prepared the day after the incident. However, despite defense counsel's failure to ask B.W. about his pretrial statements and failure to introduce the written statement of April 30, we cannot say that defense counsel was ineffective. The record reveals that while B.W. may not have initially stated that the defendant had spoken directly to him, he revealed that fact prior to the trial. For example, on May 21, 2001, Officer Jim Engelman filed a supplemental report after he reinterviewed B.W. and other witnesses. The report specifically states that the defendant picked up B.W.'s glove, put it on, and then "told [B.W.] that he found the glove." Additionally, B.W.'s testimony that the defendant had spoken to him was corroborated by Todd Brown and M.M., both of whom testified that the defendant had spoken to B.W. Under these circumstances, any error that occurred due to defense counsel's failure to introduce the first written statement was harmless.

The second contention of ineffective assistance is that defense counsel failed to object to vague charges and force the State to reveal the basis of the charges against the defendant. The defendant insists that his counsel was aware that the charges were vague, because he filed a motion in which he argued that the statutory language of section 11—9.4(a) was so vague that it was unconstitutional, yet he failed to move to dismiss the charges as too general or ask for a bill of particulars.

██ While we agree that the failure to object to a vague charge or request a bill of particulars can be a basis for ineffective assistance of counsel (see, *e.g., People v. Meier*, 223 Ill. App. 3d 490, 492, 585 N.E.2d 232, 234 (1992)), we do not agree that defense counsel was ineffective

in the instant case. As previously set forth, we believe that the defendant was properly charged. Moreover, the defendant's argument that a bill of particulars was required is contradicted by the manner in which the defendant testified. The defendant specifically denied speaking to or approaching B.W. and claimed that his encounter with B.W. was inadvertent. If the trial court believed the defendant's version of events, then the defendant would have been found not guilty. The defendant set forth the proper defense, but the trial court found the defendant's testimony not credible.

■ The defendant further contends that his trial counsel was ineffective for not filing a timely posttrial motion. However, because the State did not object to the untimely motion and participated in the proceedings conducted on the motion, the defendant cannot show prejudice due to the untimeliness of the motion. Accordingly, the defendant fails to satisfy *Strickland*'s prejudice prong. After reviewing the record and carefully considering the defendant's arguments regarding ineffective assistance, we find that the defendant was provided with adequate representation at the trial.

## VII. Same Physical Act

The defendant asserts that his convictions on counts I and II were based upon the same physical act and that, therefore, he can only be convicted on one count. The State replies that the record not only supports separate convictions on counts I and II but also supports a conviction on count III and that, therefore, count III should be reinstated. We disagree with the defendant, but we decline to reinstate the conviction on count III.

■ In *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977), the Illinois Supreme Court set forth the following with regard to whether a defendant's conduct consists of separate acts or a single physical act:

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser[-]included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.

After considering the Illinois Supreme Court's guidelines in *King*, we find the trial court's analysis correct.

■ In the instant case, the defendant was charged with three separate violations of section 11—9.4(a): count I alleged improper

communication, count II alleged improper approach, and count III alleged improper contact. The trial count determined that count III (contact) and count II (approach) derived from the same physical act, and it entered a judgment on counts I and II only. We agree that the defendant committed two separate violations of the statute. The record shows that the defendant both communicated with and approached B.W. We also agree with the trial court that the approach and contact counts consisted of a single physical act because there was no substantial change in the nature of the criminal objective. The defendant's convictions on counts I and II are, therefore, affirmed. We decline to reinstate count III.

## VIII. Sentencing

Finally, the defendant contends that the trial court abused its discretion in sentencing him because the sentences imposed were excessive in light of the circumstances, in particular, the relatively minor nature of the offenses. The defendant insists his sentence should be reduced to time served. The State replies, and we agree, that the trial court did not abuse its discretion in sentencing the defendant to concurrent, six-year, extended-term sentences.

The imposition of a sentence is left to the sound discretion of the trial court, and absent an abuse of that discretion, the sentence of the trial court may not be altered upon review. *People v. Younger*, 112 Ill. 2d 422, 427, 494 N.E.2d 145, 147 (1986). Great deference is given to the trial court because it is in the best position to consider the defendant's "credibility, demeanor, general moral character, mentality, social environment, habits[,] and age." *People v. O'Neal*, 125 Ill. 2d 291, 298, 531 N.E.2d 366, 368 (1988). While reviewing courts have the power and the authority under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) to reduce a sentence imposed by the trial court, that power should be exercised cautiously. *O'Neal*, 125 Ill. 2d at 298, 531 N.E.2d at 368-69.

The defendant has several strikes against him. He has a history of serious sexual offenses against children, including sexual penetration of a male child. Less than a month before the instant offenses, he had been charged with a separate violation of the statute involved here. The trial court specifically found that the defendant lacked credibility and that he was a threat to the community. The trial court was correct, because sex offenders are known to have a high recidivism rate. *Stork*, 305 Ill. App. 3d at 721, 713 N.E.2d at 192. Accordingly, we cannot say that the trial court abused its discretion in sentencing the defendant to concurrent, six-year extended terms.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

MAAG and DONOVAN, JJ., concur.