2016 IL App (3d) 130959

Opinion filed January 13, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-13-0959 Circuit No. 12-CF-1177 |
| | ) | |
| ARCHIE C. HOWARD, | ) ) | Honorable Stephen Kouri and Honorable David Brown, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1      The State charged defendant Archie C. Howard with the felony offense of being present in a school zone as a child sex offender. A police officer discovered defendant, a registered sex offender, sitting in a vehicle parked within 15 feet of school property while children were present and playing on the school playground. The court found defendant guilty and sentenced defendant to 30 months of probation. Defendant filed a timely notice of appeal challenging the court's decision finding him guilty of the charged offense and the constitutional vagueness of the statute. We affirm.

¶ 2                                            BACKGROUND

¶ 3         On December 4, 2012, the State filed an indictment alleging that, on or about

November 8, 2012, defendant was "a sex offender, having been convicted of aggravated criminal

sexual abuse in Peoria County case [No.] 03-CF-282, knowingly loitered within 500 feet of

Irving School at 519 NE Glendale, Peoria, Illinois[,] while persons under the age of 18 years

were present in that school building," in violation of section 11-9.3(b) of the Criminal Code of

1961 (Code) (720 ILCS 5/11-9.3(b) (West 2010)).

¶ 4         The court held a bench trial on June 6, 2013.  The State's first witness, Officer Chris

Lenover, testified he was employed by the City of Peoria police department as a patrol officer on

November 8, 2012.  Officer Lenover was driving southbound on Glendale Avenue around 11:00

a.m. when he observed a silver Ford Taurus parked and "sitting partially in an intersection there

at Hancock and Glendale."  Officer Lenover drove around the block, ran the vehicle's

registration number through the computer, and discovered the vehicle was owned by a registered

sex offender.  The officer observed the driver sitting in the parked Taurus near Irving School, a

Peoria public school, while 80 to 100 children were outside on the school grounds because it was

a school day.  The officer estimated the children were between the ages of 6 and 10 years old.

¶ 5         Officer Lenover activated his emergency lights, approached the vehicle, obtained the

driver's license from the driver (defendant), and determined defendant was currently a registered

sex offender.  After approaching defendant's vehicle, Officer Lenover informed defendant that

parking in the crosswalk and partially blocking the intersection constituted a traffic violation.

Officer Lenover also asked defendant why he stopped at that location.  Defendant responded by

telling the officer he knew he was not supposed to be around schools or children because he was

a registered sexual predator. Officer Lenover arrested defendant for being present in a school zone as a registered sex offender.

¶ 6 After placing defendant in the squad car, Tumika Jordan (Jordan) came out of the school building and advised the officer that she asked defendant to drive her to Irving School so she could drop lunches off for her grandchildren. The officer asked Jordan if she knew defendant was a registered sex offender, and Jordan said, "No."

¶ 7 The court took judicial notice of defendant's prior conviction in Peoria County case No. 03-CF-282, a Class 2 felony conviction for aggravated criminal sexual abuse entered on September 19, 2003. The State rested its case.

¶ 8 The defense's witness, Jordan, testified she met defendant a year ago and he occasionally provided rides for her since she did not have a car or a valid driver's license. On November 8, 2012, defendant picked Jordan up at her house and they went to the grocery store. Next, defendant drove Jordan to McDonald's restaurant and then drove her to Irving School to deliver the McDonald's lunches to her grandchildren. Jordan said she was inside the school building for approximately five minutes to drop off the lunches and, when she exited the building, she saw the police car by defendant's car. Jordan testified defendant's car was parked directly across the street from the school at a stop sign.

¶ 9 Defendant testified he initially went to the driver's license bureau to get his driver's license on November 8, 2012. Next, he picked up Jordan at her house and drove her to the grocery store, McDonald's restaurant, and Irving School where Jordan delivered the lunches for her grandchildren. As defendant waited for Jordan, he said he started filling out his bills while seated in his car. Defendant said he did not know how long Jordan expected to be in the school

3

when he dropped her off, and he did not leave his car at any time while he waited for Jordan to return.

¶ 10    Defendant said he observed the police car pass his vehicle and continue down the street. "[A] minute or so later," defendant said the squad car turned around and "put his lights on me." According to defendant, the officer asked him approximately four times what he was doing there and defendant testified, "I started telling him I was delivering the woman who was with me who was delivering food to the school to the grandkids." The officer explained to defendant that he was a sex offender and was supposed to be 500 feet away from the school. Defendant said he explained to the officer that he drove Jordan to the school because she could not walk well. Defendant said he stopped at the intersection close to the school to make it easier for Jordan. Defendant said the officer then placed him under arrest. The defense rested its case.

¶ 11    The court took the matter under advisement. On June 24, 2013, the court issued a written order. In this order, the court found:

> "1. It is alleged that the defendant committed the offense of being a child sex offender in a school zone. Pursuant to 720 ILCS 5/11-9.3(b), 'It is unlawful for a child sex offender to knowingly **loiter** within 500 feet of a school building or real property comprising any school while persons under the age of 18 are present in the building or on the grounds, unless the offender is a parent or guardian of a student attending the school . . .' (emphasis added.) [1]
>
> 2. The statute defines 'loitering' as 'standing, sitting idly, whether or not the person is in a vehicle, or remaining in or around school or public park property.' 720 ILCS 5/11-9.3(d)(11)(i).

---

[1]This is a quote from the trial court's order, which included the "(emphasis added)" language as written in the original.

3. The defendant, having been previously convicted of aggravated criminal sexual abuse, is a child sex offender as set forth in the subject statute.

4. The defendant, having been in a vehicle within 500 feet of Irving School, is in direct violation of the statute. The reason given for his presence at the school has no merit in this case.

5. The defendant is not a parent or guardian of a student attending the school and therefore he does not meet the exception of the statute."

The court found defendant guilty of the offense of being present in a school zone as a sex offender.

¶ 12    On July 17, 2013, defendant filed a "Motion for Judgment (N.O.V.)" claiming the court erred in finding that defendant knowingly loitered within 500 feet of a school building. Defendant contended that the facts did not prove he was "loitering" near the school property as required by statute, therefore, defendant asked the court to reverse its guilty finding.[2] After hearing argument, the court denied the defense motion for judgment *n.o.v.*

¶ 13    On November 21, 2013, defendant received a sentence of 30 months' probation, with "intensive probation" for the first 12 months, and the court ordered him to pay court costs and fees. The court also ordered defendant to cooperate with any type of treatment, counseling, or education that the probation department determined was appropriate. Defendant does not challenge any component of the sentence he received, but filed a timely notice of appeal challenging his conviction.

¶ 14                                        ANALYSIS

¶ 15    On appeal, defendant contends the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of being present in a school zone as a child sex offender because his

_____

[2]Defendant did not challenge the constitutionality of the statute before the trial court.

5

conduct did not constitute "sitting idly" as required to meet the definition of loitering for purposes of the statute. Defendant focuses on a narrow evidentiary insufficiency regarding whether the State proved he was idle at the time of his arrest. Alternatively, defendant submits the statute at issue is unconstitutionally vague as it applies to his conduct.

¶ 16                                    I. Sufficiency of the Evidence

¶ 17          Generally, when a defendant challenges the sufficiency of the evidence regarding an element of the charged offense, a reviewing court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Amigon*, 239 Ill. 2d 71, 78 (2010); *People v. Pollock*, 202 Ill. 2d 189, 217 (2002). On review, this court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *Amigon*, 239 Ill. 2d at 78; *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 18          As defendant asserts, the material facts in this case are not in dispute. Thus, when the facts are undisputed, defendant correctly points out that the determination of the sufficiency of the evidence becomes a question of law subject to our *de novo* review. See *People v. Smith*, 191 Ill. 2d 408, 411 (2000). Defendant further submits that this case requires statutory interpretation, applying the undisputed facts to the language of the statute to determine whether the essential elements have been proven, which is a question of law that we review *de novo*. *Amigon*, 239 Ill. 2d at 84.

¶ 19          Here, defendant contends the trial court erred by finding him guilty of the offense of being present in a school zone as a child sex offender because the State's evidence did not

6

demonstrate defendant was "loitering" at that location as defined by the statute. We begin with the provisions of the statute, which in relevant part provides:

> "It is unlawful for a child sex offender to knowingly loiter within 500 feet of a school building or real property comprising any school while persons under the age of 18 are present in the building or on the grounds, *unless* the offender is a parent or guardian of a student attending the school and the parent or guardian is: (i) attending a conference at the school with school personnel to discuss the progress of his or her child academically or socially, (ii) participating in child review conferences in which evaluation and placement decisions may be made with respect to his or her child regarding special education services, or (iii) attending conferences to discuss other student issues concerning his or her child such as retention and promotion *and* notifies the principal of the school of his or her presence at the school or has permission to be present from the superintendent or the school board or in the case of a private school from the principal." (Emphases added.) 720 ILCS 5/11-9.3(b) (West 2010).

In the case at bar, the State charged defendant with a violation of section 11-9.3(b), which provides that a non-parent or non-guardian who is a sex offender may not loiter within 500 feet of school property for any reason. *Id.*

¶ 20    Defendant asks this court to apply the definition of "idle" as defined in the Merriam-Webster Dictionary. Merriam-Webster Online Dictionary (2015); http://www.merriam-webster.com/dictionary/idle. However, since the statute includes a definition for loitering within section 11-9.3(d)(11) of the Code (720 ILCS 5/11-9.3(d)(11) (West 2010)), we must rely on the legislative definition to construe the clear and unambiguous language of the statute itself. See

7

*People v. Belk*, 203 Ill. 2d 187, 192 (2003). Section 11-9.3(d)(11) provides the definition for loitering as used in this section. 720 ILCS 5/11-9.3(d)(11)(i) (West 2010). Sections 11-9.3(d)(11)(i) and (ii) both have common language prohibiting "[s]tanding, sitting idly, whether or not the person is in a vehicle, or remaining in or around school or public park property." 720 ILCS 5/11-9.3(d)(11)(i), (ii) (West 2010). However, section 11-9.3(d)(11)(ii) prohibits "[s]tanding, sitting idly, whether or not the person is in a vehicle, or remaining in or around school or public park property, for the purpose of committing or attempting to commit a sex offense." 720 ILCS 5/11-9.3(d)(11)(ii) (West 2010). The charging instrument in this case alleged defendant was "loitering" but did not allege defendant did so with a specific unlawful purpose to commit or attempt to commit a sex offense. Thus, as charged, the State took on the task of proving the offense based on the definition of loitering found in the language of section 11-9.3(d)(11)(i). 720 ILCS 5/11-9.3(d)(11)(i) (West 2010). We agree the State did not prove loitering as defined by section 11-9.3(d)(11)(ii), which requires loitering for a specific purpose, or as defined by section 11-9.3(d)(11)(iii), which involves entry into a building. 720 ILCS 5/11-9.3(d)(11)(ii), (iii) (West 2010).

¶ 21    Defendant claimed he had his own legitimate purpose for remaining in his car within 15 feet of the school property. However, the State alleged defendant committed an act described as loitering and proved beyond a reasonable doubt defendant's conduct fell within the definition of loitering contained in section 11-9.3(d)(11)(i) even if his conduct did not meet the requirements to constitute loitering under all three definitions found in sections 11-9.3(d)(11)(i), (ii) and (iii). 720 ILCS 5/11-9.3(d)(11)(i), (ii), (iii) (West 2010).

¶ 22    Whether the statute giving rise to the charge was unconstitutionally vague is addressed below. However, at this juncture we focus on whether the State's evidence satisfied each

element of the offense as charged.  It is important to note that, although defendant claims he was not sitting idly, he was charged in the indictment with loitering and loitering also includes "remaining" in the restricted zone.

¶ 23     In this case, it is undisputed that there were students under age 18 present on the school property; and defendant was within 500 feet of the school zone.  Further, it is not disputed that defendant was neither a parent nor guardian of a student attending Irving School, and that defendant did not have prior permission to remain near school property after dropping off his friend.  Therefore, the only contested element of the offense is whether defendant's conduct constituted loitering by "remaining" in the restricted area.  We conclude the evidence presented to the court was sufficient to prove defendant loitered by remaining in the restricted zone for several minutes and the State's evidence proved defendant guilty of a violation of section 11-9.3(b), based on the definition of loitering in section 11-9.3(d)(11)(i), beyond a reasonable doubt, as charged.

¶ 24     Next, we consider whether the statute is too vague such that defendant's conviction should be set aside on constitutional grounds.

¶ 25                              II. Constitutionality of the Statute

¶ 26     In this case, the State charged defendant, a sex offender, with loitering near school property in violation of section 11-9.3(b).  720 ILCS 5/11-9.3(b) (West 2010).  The statute provides:  "It is unlawful for a child sex offender to knowingly *loiter* within 500 feet of a school building or real property comprising any school while persons under the age of 18 are present in the building or on the grounds, *unless* the offender is a parent or guardian of a student attending the school and the parent or guardian *** or has permission to be present."  (Emphases added.) *Id.*

9

¶ 27    Defendant argues that subsequent sections of the statute, namely sections 11-9.3(d)(11)(i) and (ii) define "loitering" near school property in two alternative ways that render the statute unconstitutionally vague as it applies to this defendant.  720 ILCS 5/11-9.3(d)(11)(i), (ii) (West 2010).  We begin by considering the language of the statute.

¶ 28    Section 11-9.3(d)(11) of the statute is set forth below:

" 'Loiter' means:

(i) Standing, sitting idly, whether or not the person is in a vehicle, or remaining in or around school or public park property.

(ii) Standing, sitting idly, whether or not the person is in a vehicle, or remaining in or around school or public park property, for the purpose of committing or attempting to commit a sex offense.

(iii) Entering or remaining in a building in or around school property, other than the offender's residence."  720 ILCS 5/11-9.3(d)(11) (West 2010).

¶ 29    In support of the argument that this statute is unconstitutionally vague, defendant points out that section 11-9.3(d)(11)(i) defines loitering as "[s]tanding, sitting idly, whether or not the person is in a vehicle, or remaining in or around school *** property."  720 ILCS 5/11-9.3(d)(11)(i) (West 2010).  Alternatively, defendant points out that section 11-9.3(d)(11)(ii) is conflicting with the previous provision because section 11-9.3(d)(11)(ii) indicates loitering occurs when a person, "for the purpose of committing or attempting to commit a sex offense," stands, sits idly, or remains near school property.  720 ILCS 5/11-9.3(d)(11)(ii) (West 2010).

¶ 30    Generally, statutes are presumed to be constitutional and defendant has the burden of rebutting that presumption and clearly establishing a constitutional violation.  *People v. Jones*, 223 Ill. 2d 569, 595-96 (2006); *People v. Einoder*, 209 Ill. 2d 443, 450 (2004).  If reasonably

10

possible, a court has a duty to construe a statute so as to uphold its constitutionality. *Jones*, 223 Ill. 2d at 595-96; *Einoder*, 209 Ill. 2d at 450. Whether a statute is constitutional is a question of law that we review *de novo*. *Einoder*, 209 Ill. 2d at 450.

¶ 31    In this case, defendant contends the United States Supreme Court case of *City of Chicago v. Morales* is controlling. *City of Chicago v. Morales*, 527 U.S. 41 (1999). The Chicago ordinance at issue in *Morales* prohibited a gang member from loitering in *any* public place with one or more person, and included a definition for "loiter" as "to remain in any one place with no apparent purpose." (Internal quotation marks omitted.) *Id.* at 47. In contrast, the statute in this case prohibits loitering within a very specific restricted zone within 500 feet of school property and provides three examples of conduct that constitutes loitering as described by section 11-9.3(d)(11) of the Code. 720 ILCS 5/11-9.3(d)(11) (West 2010). We are mindful that the ordinance in *Morales* was far more general and conclude the decision in *Morales,* while helpful*,* is not controlling.

¶ 32    A statute can be challenged as unconstitutionally vague in two ways: (1) on the statute's face, or (2) as the statute is applied to defendant's actions. *Einoder*, 209 Ill. 2d at 448 (citing *People v. Greco,* 204 Ill. 2d 400, 416 (2003)). Here, defendant contends section 11-9.3(b) of the Code and the definition of loitering is unconstitutionally vague as it applies to his actions. Therefore, we look at defendant's actions " 'in light of the particular facts of the case.' " *Id*. at 451 (quoting *Greco,* 204 Ill. 2d at 416). " 'When the statute is examined in the light of the facts of the case and the statute clearly applies to the [defendant's] conduct, then a challenge to the statute's constitutionality based upon vagueness will be unsuccessful.' " *Id.* at 451-52 (quoting *People ex rel. Sherman v. Cryns,* 203 Ill. 2d 264, 291-92 (2003)).

11

¶ 33     To satisfy the vagueness doctrine, a statute must meet two criteria: first, the terms of the statute must provide a person of common intelligence the reasonable opportunity to distinguish between lawful and unlawful conduct so that he or she may act accordingly; and, second, the statute must define the offense adequately so as to prevent arbitrary or discriminatory enforcement of the statute. *Id.* at 450-51; *Greco,* 204 Ill. 2d at 415-16; *People v. Maness*, 191 Ill. 2d 478, 483-84 (2000). A statute is not unconstitutionally vague simply because one can conjure up a hypothetical dispute over the meaning of some of the act's terms. *Greco*, 204 Ill. 2d at 416.

¶ 34     In order to succeed on a vagueness challenge as it applies to a defendant, a defendant must establish that the statute is vague as it applies to the conduct for which defendant is being prosecuted. *Einoder*, 209 Ill. 2d at 451. A statute violates due process as it applies to that person when it forbids the doing of an act in terms so vague that a person of normal intelligence must guess at its meaning and differ as to its application. *People v. Stork*, 305 Ill. App. 3d 714, 723 (1999).[3]

¶ 35     Regarding whether the language of section 11-9.3(b) was too vague, we begin by focusing on the language of the statute. The statute reads as follows:

> "It is unlawful for a child sex offender to knowingly loiter within 500 feet of a school building or real property comprising any school while persons under the age of 18 are present in the building or on the grounds, *unless* the offender is a parent or guardian of a student attending the school and the parent or guardian is: (i) attending a conference at the school with school personnel to discuss the progress of his or her

---

[3]The *Stork* case appears to be the only case in Illinois that has addressed the constitutionality of section 11-9.3 of the Code to determine whether the statute involving a sex offender being present within 500 feet of school property is unconstitutionally vague on its face or as applied to that defendant. S*tork*, 305 Ill. App. 3d at 723.

child academically or socially, (ii) participating in child review conferences in which evaluation and placement decisions may be made with respect to his or her child regarding special education services, or (iii) attending conferences to discuss other student issues concerning his or her child such as retention and promotion *and* notifies the principal of the school of his or her presence at the school or has permission to be present from the superintendent or the school board or in the case of a private school from the principal." (Emphases added.) 720 ILCS 5/11-9.3(b) (West 2010).

¶ 36    After careful review of the statutory language, we conclude the statutory scheme clearly delineates one very small restricted area, a 500-foot zone surrounding school property. This geographical restriction was not present in the ordinance considered in *Morales* (*supra* ¶ 31). Section 11-9.3(b) also prohibits certain conduct during a specific time period, that is, when children under 18 are present. Finally, we observe the statute at issue allows some sex offenders to be present in the restricted school zone and during the restricted time period *with* the permission of certain persons in authority. The statute carefully recognizes two categories of sex offenders: (1) a sex offender that has received permission to be present in the restricted school zone *and* is also a parent or guardian of a child attending a particular school; and (2) a sex offender who is not a parent or guardian of any child enrolled in the school and has no parental duties giving rise to a need for remaining in the restricted school zone for their enrolled student/child.

¶ 37    The Court in *Morales* was troubled by language in the Chicago ordinance focusing on a gang member's lack of "apparent" purpose to remain at *any* public location. *Morales*, 527 U.S. 41. However, the statute at issue in this appeal applies to a non-parent who remains in the

13

restricted school zone, even with a lawful purpose in mind. Therefore, we conclude there are other very narrow conditions here that were not present in *Morales*.

¶ 38    Unlike the ordinance at issue in *Morales*, sex offenders, who are not parents of a child in the school, are subject to the Illinois state statute at issue and are clearly put on notice that they may not hesitate when finding themselves within the 500-foot zone near a school. If a sex offender intends to stand, sit idly, *or remain* within the 500-foot zone, any one of these acts, regardless of a lawful purpose, are forbidden near schools.

¶ 39    Our conclusions are consistent with the rationale expressed by the *Stork* court, which held:

> "Section 11-9.3 does not attempt to entirely prohibit child sex offenders from school zones, but it confines its prohibitions to those child sex offenders who are not parents or guardians of children at the school and those without permission to be present. The statute restricts child sex offenders from a readily identifiable area, such as the school building or a public way within 500 feet of school property. Furthermore, the statute is limited to those times when persons under the age of 18 are present within the school zone. We believe these items provide objective criteria in the statutory proscription that lack the potential for arbitrary and discriminatory enforcement."
>
> *Stork*, 305 Ill. App. 3d at 723-24.

¶ 40    We recognize that the definitions of loitering set out in section 11-9.3(b)(i) and (ii) are arguably inconsistent with respect to the prohibited conduct of a sex offender who is the *parent* of a child attending a particular school and who has obtained permission to be present at the school. In that situation, a sex offender could arguably be guilty of violating section 11-9.3(b) if he or she loitered with the requisite criminal purpose to commit or attempt to commit a sexual

14

offense in spite of permission. However, here, defendant was *not* a parent of any child present at Irving School, and did not fall within the category of sex offender parents that may claim confusion based on the vagueness of the statute as it applied to them. The statute makes it very clear that a sex offender who is not a parent may not remain in the restricted school zone for any purpose, lawful or unlawful, while children under age 18 are present.

¶ 41 Defendant was well aware of the restrictions on his ability to remain within 500 feet of the school while children were present. In fact, Officer Lenover testified that defendant told the officer he was a sex offender and knew he should not be present where he was parked. Accordingly, we conclude the statute is not unconstitutionally vague as it applies to defendant and his conduct.

¶ 42                                                CONCLUSION

¶ 43 For the foregoing reasons, we affirm the defendant's conviction for being present in a school zone as a sex offender.

¶ 44 Affirmed.

¶ 45 JUSTICE McDADE, dissenting.

¶ 46 The majority has affirmed the decision of the circuit court of Peoria County finding defendant guilty beyond a reasonable doubt of being a sex offender loitering in a school zone. I agree with the majority's finding that under two of the statute's definitions for loitering Howard was clearly not guilty. He was not "[s]tanding, sitting idly ***, or remaining ***, for the purpose of committing or attempting to commit a sex offense" or "[e]ntering or remaining in a building in or around school property." 720 ILCS 5/11-9.3(d)(11)(ii), (iii) (West 2010). However, our opinions diverge with respect to the remaining definition and the necessity of a *mens rea* for criminal statutes such as this. Thus I respectfully disagree with the majority's finding because

15

defendant was not loitering as defined by the statute and thus was not guilty beyond a reasonable doubt.

¶ 47     A reviewing court is duty-bound to "construe a statute in a manner that upholds its validity and constitutionality if it reasonably can be done." *People v. Graves*, 207 Ill. 2d 478, 482 (2003). The remaining definition that the majority finds justifies defendant's conviction states that loitering is "[s]tanding, sitting idly, *** or remaining." 720 ILCS 5/11-9.3(d)(11)(i) (West 2010). The definition does not further define idle or provide a required *mens rea*. see *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999); see also *Colautti v. Franklin,* 439 U.S. 379, 395 (1979) ("This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*.").

¶ 48     To uphold the validity of this section of the statute, we would either need to (1) read into it the *mens rea* provided in the otherwise identical definition of section 5/11-9.3(d)(11)(ii), which states that the *mens rea* is loitering for the purpose of committing or attempting to commit a sex offense, or (2) to an outside source to define idle and garner a *mens rea* in that respect. If we were to do the former, definitions in subsections (i) and (ii) would be identical, rendering one of them superfluous. If we were to choose the latter, we would find the plain and ordinary meaning of "idle" is to sit inactively or with no real purpose. Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/idle (last visited Oct. 5, 2015); see also *People v. Haywood*, 118 Ill. 2d 263, 277 (1987). Thus under either line of reasoning, Howard was not guilty of loitering as the facts are undisputed with regard to his purpose for being parked outside of the school at the time the officer happened upon him. He was not sitting inactive but was paying bills while waiting for his friend to return from the school where she was dropping lunch off to her grandchildren.

16

¶ 49          Simply put, the State failed to prove the element of loitering and, ultimately, that Howard was guilty beyond a reasonable doubt.