# Illinois Official Reports

## Supreme Court

***People v. Pepitone*, 2018 IL 122034**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARC A. PEPITONE, Appellee. |
| Docket No. | 122034 |
| Filed | April 5, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Carmen Goodman, Judge, presiding. |
| Judgment | Appellate court judgment reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick, Matthew P. Becker, and Eldad Z. Malamuth, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>Katherine M. Strohl, of Ottawa, for appellee.<br><br>Adele D. Nicholas and Mark G. Weinberg, both of Chicago, for *amicus curiae* Illinois Voices for Reform.<br><br>Paul M. Dubbeling, of P.M. Dubbeling, PLLC, of Chapel Hill, North Carolina, for *amicus curiae* National Association for Rational Sexual Offense Laws. |

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1 Section 11-9.4-1(b) of the Criminal Code of 2012 provides, "It is unlawful for a sexual predator or a child sex offender to knowingly be present in any public park building or on real property comprising any public park." 720 ILCS 5/11-9.4-1(b) (West 2016). The sole issue in this case is whether that statute is facially violative of substantive due process. The Will County circuit court rejected defendant Marc Pepitone's due process claim, but the appellate court majority accepted it and reversed his conviction. 2017 IL App (3d) 140627. For the reasons that follow, we reverse the judgment of the appellate court and affirm the defendant's conviction and sentence.

¶ 2 BACKGROUND

¶ 3 In 1998, the defendant was charged with predatory criminal sexual assault of a child, criminal sexual assault, and aggravated criminal sexual abuse. He pleaded guilty to predatory criminal sexual assault of a child.[1] The trial court sentenced him to six years' imprisonment.

¶ 4 Fourteen years later, in 2013, Village of Bolingbrook police officer Steven Alexander was patrolling a municipal park around 4:30 p.m. when he observed a van improperly parked across three spaces. Officer Alexander checked the van's plates and learned that it was registered to the defendant. While Officer Alexander was standing near the van, the defendant approached with his dog. The defendant asked Officer Alexander if there was a problem with the van. The defendant related that he was a child sex offender but that his registration requirement had expired in 2010. Officer Alexander informed the defendant that, as a child sex offender, he was forbidden to be on park property. Though the defendant was unaware of such a ban, he was arrested for violating section 11-9.4-1(b).

¶ 5 The defendant filed a motion to dismiss the charge, arguing that the statute is facially unconstitutional under the federal and state due process clauses (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) and unconstitutional as applied under the federal and state *ex post facto* clauses (U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16). The trial court denied that motion, and the case proceeded to a one-day jury trial. The parties stipulated that the defendant

---

[1]Section 11-1.40(a)(1) of the Criminal Code sets out the basic offense of predatory criminal sexual assault of a child:

"(a) A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and:

(1) the victim is under 13 years of age[.]" 720 ILCS 5/11-1.40(a)(1) (West 2016).

Predatory criminal sexual assault of a child is a Class X felony, and the sentencing range for that offense is 6 to 60 years. 720 ILCS 5/11-1.40(b)(1) (West 2016).

is a child sex offender under section 11-9.4-1(b). At the close of the State's evidence, the defendant made a motion for a directed verdict, again arguing that the statute was unconstitutional. The trial court denied that motion, and the jury found the defendant guilty of violating the statute. The trial court entered judgment on the jury's verdict and later sentenced the defendant to 24 months' conditional discharge and 100 hours of community service and fined him $400. The defendant filed a motion for a new trial, asserting that the trial court erred in denying his motion to dismiss. The court denied the defendant's motion for a new trial, and he appealed.

¶ 6　　A divided appellate court panel reversed, holding that section 11-9.4-1(b) is facially violative of substantive due process. 2017 IL App (3d) 140627. The appellate court majority noted that *People v. Avila-Briones*, 2015 IL App (1st) 132221, and *People v. Pollard*, 2016 IL App (5th) 130514, both had rejected substantive due process challenges to the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2012)), the Sex Offender Community Notification Law (730 ILCS 152/101 *et seq.* (West 2012)), and several other sex offender statutes, including section 11-9.4-1(b). 2017 IL App (3d) 140627, ¶¶ 12-13. The appellate court majority was not persuaded by the analyses in those cases, which it termed "incomplete and truncated." *Id.* ¶ 14. Instead, the majority chose to follow cases from this court in which statutes were invalidated under due process for criminalizing innocent conduct. *Id.* ¶ 15. According to the majority, those cases, "while very different in their facts, are significant *** because the statutes at issue, like section 11-9.4-1(b), contain no culpable mental state" and "reach countless types of innocent conduct." *Id.* ¶ 20. The appellate court majority insisted, "Mere presence in a public park building or public park, without more, is not unlawful conduct." *Id.*

¶ 7　　Further, the majority noted that, unlike its repealed predecessor (see 720 ILCS 5/11-9.4(a) (West 2010)), which "actually attempted to tie the child sex offender's presence to times when children were also present" (2017 IL App (3d) 140627, ¶ 21), section 11-9.4-1(b) "cannot be reasonably construed as *aimed* at preventing a substantial step toward the commission of a sex offense against a child or any offense that would result in an individual qualifying as a sexual predator" (emphasis in original) (*id.* ¶ 20). The current statute was "premised on a vague notion that a child or other 'target' may be present in a public park building or on public park property," and it "makes no attempt to assess the dangerousness of a particular individual." *Id.* ¶ 22.

¶ 8　　The appellate court majority highlighted the "overly broad sweep" of section 11-9.4-1(b) and provided an "extensive" list of activities that occur on public park property, in which persons like the defendant cannot participate. *Id.* ¶ 23. The majority concluded that the statute violated due process because "it is not reasonably related to its goal of protecting the public, especially children," from individuals fitting the definition of a child sex offender and because it is not "drafted in such a way as to effect that goal without arbitrarily stripping a wide swath of innocent conduct and rights" from such individuals who have already "paid the penalty" for their crimes. *Id.* ¶ 24.

¶ 9　　Justice Carter dissented. He would have followed *Avila-Briones* and *Pollard* and held that "the means adopted in *** section 11-9.4-1(b) are a reasonable method of accomplishing the legislature's desired objective of protecting the public from sex offenders." *Id.* ¶ 31 (Carter, J., dissenting). Justice Carter surmised that "[b]y keeping sex offenders who have committed sex

offenses against children away from areas where children are present, the legislature could have rationally sought to avoid giving those sex offenders an opportunity to reoffend." *Id.* ¶ 32.

¶ 10     This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). We also allowed both Illinois Voices for Reform and the National Association for Rational Sexual Offense Laws to file *amicus curiae* briefs in support of the defendant. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 11                                     ANALYSIS

¶ 12     The analysis in this case is guided by familiar principles. All statutes carry a strong presumption of constitutionality. *People v. Hollins*, 2012 IL 112754, ¶ 13. Accordingly, this court will uphold statutes whenever reasonably possible, resolving all doubts in favor of their validity. *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010). To rebut the presumption, a party challenging a statute must establish clearly that it violates the constitution. *People v. Rizzo*, 2016 IL 118599, ¶ 23. That burden is particularly heavy where, as here, the party raises a facial challenge, asserting that there is no circumstance in which the statute is valid. *Bartlow v. Costigan*, 2014 IL 115152, ¶ 18. On the constitutional issue before us, our review is *de novo*. *People v. Gray*, 2017 IL 120958, ¶ 57.

¶ 13     The defendant continues to assert that section 11-9.4-1(b) is facially violative of substantive due process. The fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) both provide that no person shall be deprived of life, liberty, or property without due process of law. There are two aspects to that guarantee—procedural and substantive. Procedural due process bars governmental action that infringes upon a protected interest when such action is arbitrary because it was not preceded by procedural safeguards. Substantive due process bars governmental action that infringes upon a protected interest when such action is itself arbitrary. See *People v. Cardona*, 2013 IL 114076, ¶ 17 ("a procedural due process claim asserts that the deprivation at issue is constitutionally invalid because the process leading up to it was deficient, whereas a substantive due process claim asserts that the deprivation at issue is constitutionality invalid in and of itself, irrespective of the process leading up to it"); see also *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

¶ 14     Where a statute is challenged on due process grounds, the initial step of our analysis is to determine whether the statute restricts or regulates a liberty interest and whether that liberty interest is a fundamental right. *In re J.W.*, 204 Ill. 2d 50, 66-67 (2003). Here, section 11-9.4-1(b) affects the freedom to visit public parks. The defendant acknowledges that being present in a park is not a fundamental right. Thus, the proper gauge for his substantive due process claim is the so-called rational basis test. *Rizzo*, 2016 IL 118599, ¶ 45 ("When legislation does not affect a fundamental constitutional right, this court, in a due process analysis, applies the rational basis test to determine the legislation's constitutionality."). Under that test, our inquiry is twofold: "[W]e must determine whether there is a legitimate state interest behind the legislation, and if so, whether there is a reasonable relationship between that interest and the means the legislature has chosen to pursue it." *People v. Johnson*, 225 Ill. 2d 573, 584 (2007).

¶ 15     *Johnson* states the most common version of the rational basis test, but there is another version of it in our case law. The defendant refers to that alternative version and insists that it

- 4 -

presents a three-part test where the court must determine whether there is a legitimate state interest, whether there is a reasonable relationship between that interest and the statute, and whether "the means adopted are a reasonable method of accomplishing the desired objective." *People v. Adams*, 144 Ill. 2d 381, 390 (1991); accord *Rizzo*, 2016 IL 118599, ¶ 45; *Boeckmann*, 238 Ill. 2d at 7 (citing *People v. Lindner*, 127 Ill. 2d 174, 180 (1989)); *People v. Carpenter*, 228 Ill. 2d 250, 267-68 (2008) (citing *People v. Wright*, 194 Ill. 2d 1, 24 (2000)); *J.W.*, 204 Ill. 2d at 67; see also *People v. Wick*, 107 Ill. 2d 62, 66 (1985) ("[T]he question of whether a legislative exercise of the police power meets the constitutional requirement of due process involves identifying the public interest that the statute is intended to protect, examining whether the statute bears a reasonable relationship to that interest, and determining whether the method used to protect or further that interest is 'reasonable.' " (Internal quotation marks omitted.)).

¶ 16        Both versions of the rational basis test are essentially the same. If a statute is reasonably related to a legitimate state interest, the means or method that the legislature has chosen to serve that interest will also be reasonable. See *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323 (1996) (stating that the rational basis test asks "whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal"); *DeGrazio v. Civil Service Comm'n of the City of Chicago*, 31 Ill. 2d 482, 485 (1964) ("A further test of the validity of a law or regulation is whether it is a reasonable method to accomplish a certain objective."); *Schuringa v. City of Chicago*, 30 Ill. 2d 504, 509 (1964) ("Equally settled and certain is the concept that a police [power] measure, to be beyond the pale of constitutional infirmity, must bear a reasonable relation to public health or other purpose sought to be served, the means being reasonably necessary and suitable to the accomplishment of such purpose ***."); see also *People v. Reed*, 148 Ill. 2d 1, 11 (1992) (stating that due process analysis examines " 'whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare' " (internal quotation marks omitted) (quoting *People v. Bradley*, 79 Ill. 2d 410, 417 (1980))).[2]

¶ 17        While the rational basis test is not " 'toothless' " (*People v. Jones*, 223 Ill. 2d 569, 596 (2006) (quoting *Mathews v. De Castro*, 429 U.S. 181, 185 (1976))), it remains highly deferential to the findings of the legislature (*Rizzo*, 2016 IL 118599, ¶ 45 (citing *Johnson*, 225 Ill. 2d at 585)). "The legislature's judgments in drafting a statute are not subject to judicial fact finding and 'may be based on rational speculation unsupported by evidence or empirical data.' " *Boeckmann*, 238 Ill. 2d at 7 (quoting *Arangold v. Zehnder*, 204 Ill. 2d 142, 147 (2003)). If there is any conceivable set of facts to justify the statute, it must be upheld. *Rizzo*, 2016 IL 118599, ¶ 45; *J.W.*, 204 Ill. 2d at 72 ("If there is any conceivable basis for finding a

_____

[2]The State in its opening brief offers yet another formulation of the rational basis test. According to the State, a statute will be upheld "as long as it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable." *In re M.A.*, 2015 IL 118049, ¶ 55; accord *Hollins*, 2012 IL 112754, ¶ 15 (citing *People v. Dabbs*, 239 Ill. 2d 277, 292 (2010)); see also *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 28 (stating that the rational basis test "requires a court to uphold a statute if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory"). The State's formulation contains two phrasings of the same standard. See *Doe v. City of Lafayette*, 377 F.3d 757, 773 (7th Cir. 2004). If a statute is arbitrary, it would obviously bear no rational relation to any government interest, except by chance.

rational relationship, the statute will be upheld."). This court will not second-guess the wisdom of legislative enactments or dictate alternative means to achieve the desired result. *M.A.*, 2015 IL 118049, ¶ 55. We turn to the statute at issue.

¶ 18     To review, section 11-9.4-1(b) provides, "It is unlawful for a sexual predator or a child sex offender to knowingly be present in any public park building or on real property comprising any public park." 720 ILCS 5/11-9.4-1(b) (West 2016). Section 11-9.4-1(a) adopts the definition of "child sex offender" in section 11-9.3(d) of the Criminal Code (*id.* § 11-9.4-1(a)), which includes a person charged and convicted under Illinois law with predatory criminal sexual assault of a child and various other sex offenses against minors (*id.* § 11-9.3(d)(1), (d)(2)(i)). The statute further adopts the definition of "sexual predator" in the Sex Offender Registration Act (730 ILCS 150/2(E) (West 2016)), which includes a person convicted of various sex offenses against minors. A "public park" is "a park, forest preserve, bikeway, trail, or conservation area under the jurisdiction of the State or a unit of local government." 720 ILCS 5/11-9.4-1(a) (West 2016). The statute, then, completely bars sex offenders who have targeted children from public parks. A violation of section 11-9.4-1(b) is a Class A misdemeanor. *Id.* § 11-9.4-1(d).

¶ 19     The defendant concedes that the legislature has a legitimate interest in protecting patrons of public parks from child sex offenders and sexual predators. See *People v. Minnis*, 2016 IL 119563, ¶ 37 (" 'The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.' " (quoting *New York v. Ferber*, 458 U.S. 747, 757 (1982))). Thus, the only dispute between the parties is whether there is the requisite constitutional nexus—a rational relation—between the statute's aim and its means.

¶ 20     The State argues that there is a rational relation between protecting the public and barring certain sex offenders from public parks. The State offers two links. First, the State asserts that "it is not mere conjecture that child sex offenders might seek victims in public parks" and quotes a federal appeals court opinion that noted "children, some of the most vulnerable members of society, are susceptible to abuse in parks." *Doe*, 377 F.3d at 773. In support, the State refers to cases where parks in Illinois have previously been locations for sexual assaults against minors (see, *e.g.*, *People v. Garner*, 347 Ill. App. 3d 578 (2004); *People v. Westbrook*, 262 Ill. App. 3d 836 (1992); *People v. Israel*, 181 Ill. App. 3d 851 (1989); *People v. Maxwell*, 89 Ill. App. 3d 1101 (1980)) and adults (see, *e.g.*, *People v. Foggy*, 121 Ill. 2d 337 (1988); *People v. Rodriguez*, 364 Ill. App. 3d 304 (2006); *People v. Kinney*, 294 Ill. App. 3d 903 (1998); *People v. Westfield*, 207 Ill. App. 3d 772 (1990); *People v. Cox*, 197 Ill. App. 3d 1028 (1990); *People v. Leonhardt*, 173 Ill. App. 3d 314 (1988); *People v. Bell*, 132 Ill. App. 3d 354 (1985); *People v. Buckner*, 121 Ill. App. 3d 391 (1984)).

¶ 21     The State also refers to statements by Senator Althoff, one of the sponsors of the bill that became section 11-9.4-1(b), who declared, "This legislation is necessary to protect users of public parks from child sex offenders and sexual predators who use the attributes of a park to their advantage to have access to potential victims." 96th Ill. Gen. Assem., Senate Proceedings, Mar. 16, 2010, at 55 (statements of Senator Althoff). Senator Althoff explained:

     "Public parks offer many opportunities for sexual predators and child sex offenders to
     have easy access to potential victims. Children and lone adults frequently use parks for
     recreational activities. By their nature, parks have many obscured views and other

- 6 -

distractions *** that offer opportunities for sex offenders to access potential victims." *Id.*

¶ 22    Second, the State asserts that sex offenders have high rates of recidivism. Those rates have been widely accepted by courts across the country, including the United States Supreme Court, which has mentioned "a frightening and high risk of recidivism" for convicted sex offenders. *McKune v. Lile*, 536 U.S. 24, 34 (2002) (plurality opinion); see also *Smith v. Doe*, 538 U.S. 84, 103 (2003) (highlighting a state legislature's "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class"). This court has made similar statements. See *Minnis*, 2016 IL 119563, ¶ 41 ("the legislature is entitled to 'conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism' " (quoting *Smith*, 538 U.S. at 103)); *People v. Huddleston*, 212 Ill. 2d 107, 138 (2004) ("our legislature has responded again and again to the propensity of sex offenders to repeat their crimes"); see also *People v. Diestelhorst*, 344 Ill. App. 3d 1172, 1184 (2003) (stating that sex offenders have "a notoriously high recidivism rate"); *People v. Stork*, 305 Ill. App. 3d 714, 721 (1999) (quoting a legislative declaration regarding the high recidivism rate of child sex offenders). Thus, according to the State, the legislature reasonably could have concluded that barring certain sex offenders from public parks would protect the public.

¶ 23    The defendant responds that "empirical studies" rebut the State's argument on both counts. Regarding recidivism rates, the defendant insists that the *McKune* plurality's "frightening and high" comment has been debunked. See *Does v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016) (mentioning "the significant doubt cast by recent empirical studies" on statements in *Smith* and *McKune* that the risk of recidivism is frightening and high); Ira M. Ellman & Tara Ellman, *"Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 Const. Comment. 495 (2015). The defendant points to a Human Rights Watch article, finding that only 25% of former sex offenders reoffend (see *No Easy Answers: Sex Offender Laws in the US*, Human Rights Watch, https://www.hrw.org/report/2007/09/11/no-easy-answers/sex-offender-laws-us (last visited Feb. 26, 2018)) and to a federal Bureau of Justice Statistics publication that puts the recidivism rate much lower at 5.3% (see Patrick A. Langan, Erica L. Schmitt, & Matthew R. Durose, Bureau of Justice Statistics, *Recidivism of Sex Offenders Released From Prison in 1994*, at 1 (Nov. 2003), https://www.bjs.gov/content/pub/pdf/rsorp94.pdf). Regarding parks as locations for sexual assaults, the defendant refers to another Bureau of Justice Statistics publication that indicates only a small percentage of sexual assaults occur in parks. See Lawrence A. Greenfeld, Bureau of Justice Statistics, *Sex Offenses and Offenders: An Analysis of Data on Rape and Sexual Assault* (Feb. 1997), https://perma.cc/ZG4B-D9ZP.

¶ 24    The problem for the defendant is that, regardless of how convincing that social science may be,[3] "the legislature is in a better position than the judiciary to gather and evaluate data bearing

_____

[3]One of the *amicus* briefs reminds us that it is "perhaps subjective" whether recidivism rates are low or high. Further, as the State observes, "[n]obody knows the true re-offense rate for child sex offenders" because only a small percentage of sex offenses are reported and only a small percentage of reported offenses result in arrests. However, "researchers widely agree that observed recidivism rates are underestimates of the true reoffense rates of sex offenders." (Emphasis omitted.) *Sex Offender Management Assessment and Planning Initiative*, Chris Lobanov-Rostovsky & Roger Przybylski, eds.,

on complex problems." *Minnis*, 2016 IL 119563, ¶ 41. Simply put, we are not a superlegislature. *M.A.*, 2015 IL 118049, ¶ 70.

¶ 25 The defendant then shifts his argument to overbreadth. Typically, overbreadth is an issue that appears in a first amendment context. See *Minnis*, 2016 IL 119563, ¶ 14. The defendant, however, raises a due process claim, not a free speech claim. Nevertheless, borrowing from the appellate court majority, the defendant asserts that section 11-9.4-1(b) is overbroad and, thus, irrational because it reaches "an amazingly vast array of innocent activities." The defendant relies upon *People v. Madrigal*, 241 Ill. 2d 463 (2011). There, this court addressed the constitutionality of an identity theft statute that criminalized the knowing use of another person's identification information without permission to gain access to any of that person's actions, communications, or transactions. In invalidating the statute, we held that punishing a significant amount of "wholly innocent conduct not related to the statute's purpose" is not "a rational way of addressing" a problem identified by the legislature. *Id.* at 473. The defendant cites other cases consistent with *Madrigal*. See *Carpenter*, 228 Ill. 2d at 269 (holding that a statute that "potentially criminalizes innocent conduct" is not "a reasonable means of preventing the targeted conduct," in violation of due process); *Wright*, 194 Ill. 2d at 25 ("criminal statutes that potentially punish innocent conduct violate due process principles because they are not reasonably designed to achieve their purposes"); *People v. Zaremba*, 158 Ill. 2d 36, 42 (1994) (invalidating a statute that "potentially subjects wholly innocent conduct to punishment"); *Wick*, 107 Ill. 2d at 66 (invalidating a statute that "does not require an unlawful purpose"). According to the defendant, section 11-9.4-1(b) punishes innocent conduct—not only dog walking in Bolingbrook but also visiting museums in Chicago, attending a sporting event at Soldier Field or a cultural event at Grant Park in Chicago, visiting Lincoln Park Zoo in Chicago, playing in adult sports leagues or taking adult classes sponsored by the Chicago Park District, going to public beaches in Chicago, or visiting any Illinois State Park.

¶ 26 The defendant misapprehends the statute. Section 11-9.4-1(b) does not criminalize dog walking or punish any other innocent conduct. It punishes conduct by sex offenders. As the State cogently observes, "the conduct being criminalized is a convicted child sex offender's knowing presence in a public park—that defendant was walking a dog was merely incidental to that conduct." Like the statute outlawing possession of any firearm or any firearm ammunition by a convicted felon (720 ILCS 5/24-1.1(a) (West 2016)), the statute here makes the status of the defendant an element of the offense. Consequently, conduct that is innocent for most people is not innocent for those who have been convicted of certain offenses. *Madrigal* and its "innocent conduct" predecessors are inapposite.

¶ 27 The defendant also relies upon the repealed predecessor statute to section 11-9.4-1(b) as support for his constitutional claim. That statute, formerly section 11-9.4(a) of the Criminal Code, provided:

> "It is unlawful for a child sex offender to knowingly be present in any public park building or on real property comprising any public park when persons under the age of 18 are present in the building or on the grounds and to approach, contact, or

Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, & Tracking 91 (2014), https://smart.gov/SOMAPI/pdfs/SOMAPI_Full%20Report.pdf.

communicate with a child under 18 years of age, unless the offender is a parent or guardian of a person under 18 years of age present in the building or on the grounds." 720 ILCS 5/11-9.4(a) (2010) (repealed by Pub. Act 96-1551 (eff. July 1, 2011)).

Section 11-9.3(a-10) of the Criminal Code now contains an almost identical prohibition. See 720 ILCS 5/11-9.3(a-10) (West 2016). A violation of the former section 11-9.4(a) was a Class 4 felony. 720 ILCS 5/11-9.4(e) (West 2010). Similarly, a violation of the current section 11-9.3(a-10) is a Class 4 felony. 720 ILCS 5/11-9.3(f) (West 2016).

¶ 28    Section 11-9.4(a) did not criminalize sex offenders' mere presence in public parks but rather specific conduct by sex offenders—approaching, contacting, or communicating with minors. The defendant insists that those "narrowing parameters" led the appellate court to uphold that statute against a substantive due process challenge. See *Diestelhorst*, 344 Ill. App. 3d at 1185 ("prohibiting known child sex offenders from approaching, contacting, or communicating with a child within a public park zone bears a reasonable relationship to protecting children from known sex offenders"). The former section 11-9.4(a) and the current section 11-9.3(a-10), thus, purportedly reflect reasonable attempts by the legislature to tailor a prohibition regarding sex offenders in public parks to the goal of protecting the public by preventing sexual assaults.

¶ 29    Contrary to the defendant's contention, the legislature clearly attempted to limit the application of section 11-9.4-1(b) and its penalty. Section 11-9.4-1(b) does not include in its definition of "child sex offender" persons convicted of "Romeo and Juliet" criminal sexual abuse under sections 11-1.50(b) and (c). See 720 ILCS 5/11-9.4-1(a) (West 2016); 96th Ill. Gen. Assem., Senate Proceedings, Mar. 16, 2010, at 55 (statements of Senator Althoff) (stating that the bill that became section 11-9.4-1 "excludes those convicted of criminal sexual abuse involving consensual sex when the accused is under seventeen and the victim is between nine and sixteen years of age and when the victim is thirteen to sixteen years of age and [the] accused is less than five years older"). And a violation of section 11-9.4-1(b) is a Class A misdemeanor, while a violation of section 11-9.3(a-10) is a Class 4 felony.

¶ 30    More fundamentally, the rational basis test does not require narrow tailoring; it only requires rationality. That is, the means chosen by the legislature need not be the best; they need only to be reasonable. See *J.W.*, 204 Ill. 2d at 72 ("Whether there are better means to achieve this result *** is a matter better left to the legislature."); *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 28 ("the fact that a law might be ill-conceived does not, in itself, create a constitutional problem for us to fix, for whether a statute is wise and whether it is the best means to achieve the desired result are matters for the legislature, not the courts").

¶ 31    We conclude that there is a rational relation between protecting the public, particularly children, from sex offenders and prohibiting sex offenders who have been convicted of crimes against minors from being present in public parks across the state. *Avila-Briones* and *Pollard* correctly identified a constitutional nexus. In *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84, the appellate court stated: "[B]y keeping sex offenders who have committed offenses against children away from areas where children are present ***, the legislature could have rationally sought to avoid giving certain offenders the opportunity to reoffend." The *Avila-Briones* court added that whether the statutory scheme covering sex offenders is "a finely tuned response to the threat of sex offender recidivism is not a question for rational-basis review; that is a

question for the legislature." *Id.* And in *Pollard*, 2016 IL App (5th) 130514, ¶ 41, the appellate court concluded, "There is also a direct relationship between the *** presence restrictions of sex offenders and the protection of children." See *Standley v. Town of Woodfin*, 661 S.E.2d 728, 731 (N.C. 2008) (upholding a municipal ordinance barring registered sex offenders from entering town parks and stating that the town "has a legitimate government interest in desiring to decrease and eliminate sexual crimes in its parks, and prohibiting those most likely to commit criminal sexual acts—persons previously convicted of such conduct—from entering the town's parks is a rational method of furthering that goal"). Because section 11-9.4-1(b) is rationally related to a legitimate government interest, the appellate court erred in holding that the statute is facially unconstitutional under substantive due process. *People v. Jackson*, 2017 IL App (3d) 150154, which followed the appellate court's decision in this case, is overruled to the extent that it also found section 11-9.4-1(b) unconstitutional.

¶ 32 In the conclusion of his response brief, the defendant requests that, if this court rejects his facial substantive due process claim, we remand to the appellate court for consideration of his as-applied *ex post facto* clause claim, which that court declined to address. See 2015 IL App (3d) 140627, ¶ 25 (declining to address defendant's contention brought under U.S. Const., art. I, § 10, and Ill. Const. 1970, art. I, § 16). We agree with the defendant and so remand.

¶ 33 CONCLUSION

¶ 34 For the reasons that we have stated, the judgment of the appellate court is reversed, and the cause is remanded for consideration of defendant's claim under the *ex post facto* clause.

¶ 35 Appellate court judgment reversed and remanded.