2020 IL App (1st) 181060-U

THIRD DIVISION
December 30, 2020

No. 1-18-1060

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 5071 |
| | ) | |
| EDMOND THOMAS, | ) | Honorable |
| | ) | Neera Lall Walsh |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County summarily dismissing defendant's postconviction petition is affirmed; defendant failed to make a gist of an arguably constitutional claim of ineffective assistance by appellate counsel.

¶ 2    Defendant appeals the first stage summary dismissal of his postconviction petition in which he argues ineffective assistance by appellate counsel for failing to raise a facial substantive due process constitutional challenge to the Illinois Sex Offender Registration Act (Act) (730 ILCS 150/6 (West 2014)).  On direct appeal from defendant's conviction under the Act for failing to register his change of address, appellate counsel raised various constitutional challenges arguing the Act (1) imposed an *ex post facto* punishment in violation of the United

States and Illinois Constitutions (U.S. Const. art. I, § 10, cl. 1) (Ill. Const. 1970, art. I, § 16); (2) constituted cruel and unusual punishment in violation of the eighth amendment of the United States Constitution (U.S. Const. amend. VII); and (3) violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). See *People v. Thomas*, 2017 IL App (1st) 150403-U. Defendant's constitutional challenges were unsuccessful and defendant's conviction was affirmed by this court. See *id*. Defendant subsequently filed his first postconviction petition alleging ineffective assistance by appellate counsel for failing to argue on direct appeal the Act's registration requirements violated due process, the proportionate penalties clause, and *ex post facto* principles. Defendant's petition was summarily dismissed by the trial court at first stage proceedings. Defendant appealed the dismissal arguing only that appellate counsel was ineffective for failing to raise his facial substantive due process challenge to the Act. For the reasons set forth below we affirm the trial court's judgment.

¶ 3                                    BACKGROUND

¶ 4     Defendant, Edmond Thomas, was convicted of aggravated criminal sexual abuse in 1992 for displaying a gun and forcing a sixteen-year-old victim to perform a sex act on him for which he was sentenced to six years' imprisonment. As a result of his conviction, defendant was subject to the Illinois Sex Offender Registration Act which, among other things, requires sexual predators and certain sex offenders to register with police when they change their address.

¶ 5     In March 2014, defendant was arrested for failing to register his change of address with Chicago police as required under the Act. Following a bench trial, defendant was convicted of the charge and sentenced to six years' imprisonment. Defendant subsequently appealed his conviction. See *Thomas*, 2017 IL App (1st) 150403-U. We incorporate our prior order by reference and do not restate the facts adduced at trial resulting in defendant's conviction for

failing to register his change of address as these details are not relevant to our decision here. See *id*.

¶ 6    In the direct appeal of his conviction, defendant challenged the Act's entire statutory scheme as facially unconstitutional. Defendant specifically argued the Act (1) imposed an *ex post facto* punishment in violation of the United States and Illinois Constitutions (U.S. Const. art. I, § 10, cl. 1) (Ill. Const. 1970, art. I, § 16); (2) constituted cruel and unusual punishment in violation of the eighth amendment of the United States Constitution (U.S. Const. amend. VII); and (3) violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). See *Thomas*, 2017 IL App (1st) 150403-U, ¶ 7. This court affirmed the trial court's judgment finding defendant failed to timely register with police after changing his address and further concluded his constitutional challenges to the Act failed. *Id*. With respect to defendant's constitutional challenges, this court concluded defendant did not show the registration requirements under the Act were punitive where all defendant's arguments on direct appeal hinged on the requirements of the Act constituting punishment. *Id*. at ¶ 25.

¶ 7                              Post-Conviction Petition

¶ 8    Defendant subsequently filed his first postconviction petition alleging ineffective assistance by appellate counsel for failing to argue on direct appeal the Act's registration requirements violated due process rights, the proportionate penalties clause, and *ex post facto* principles. The circuit court summarily dismissed the petition at first stage proceedings finding the petition lacked an arguable basis in law, was patently without merit, and failed to state the gist of a constitutional deprivation. Thereafter the court filed a written order of dismissal. Defendant's late notice of appeal was permitted. This appeal followed.

¶ 9                                    ANALYSIS

¶ 10                            Post-Conviction Hearing Act

¶ 11 Defendant appeals the summary dismissal of his postconviction petition at first stage postconviction proceedings which we review *de novo*. *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 14.

¶ 12 The Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.* (West 2016), provides a mechanism for collateral attack of a conviction or sentence allowing for inquiry into constitutional claims relating thereto which were not, and could not be, adjudicated during the trial or determined on appeal. *People v. House*, 2019 IL App (1st) 110580-B, ¶ 25. The Post-Conviction Hearing Act sets forth a three stage process for hearing constitutional claims. *Patterson*, 2018 IL App (1st) 160610, ¶ 15. Defendant's claim was dismissed at first stage proceedings.

> "At the first stage, the circuit court independently reviews the petition and determines whether the petition is frivolous or patently without merit. [Citations.] A petition may be summarily dismissed at the first stage as frivolous and patently without merit 'only if the petition has no arguable basis either in law or in fact.' [Citation.] A petition lacks an arguable basis in law or fact if it is based on 'an indisputably meritless legal theory or a fanciful factual allegation.' [Citation.] Because most petitions at the first stage are drafted by defendants with little legal knowledge or training, a defendant need only present a limited amount of detail in the petition to survive summary dismissal by the circuit court. [Citation.] That is, defendants only need to set forth the 'gist' of an arguably constitutional claim to meet the relatively low factual threshold to satisfy the first stage under the Act. [Citation.]" *Id.*

¶ 13    A petition lacking an arguable basis in law or fact is one based on an indisputably meritless legal theory or fanciful allegations such as a claim completely contradicted by the record or based on fantastic or delusional facts. *People v. Brown*, 236 Ill. 2d 175, 185 (2010).

¶ 14    In first stage postconviction proceedings the defendant is not required to make "a substantial showing of a constitutional violation" nor is the defendant required to "demonstrate" or "prove" the alleged constitutional violation to avoid dismissal. *People v. Tate*, 2012 IL 112214, ¶ 19.  The allegations in the petition are to be taken as true and liberally construed. *Brown*, 236 Ill. 2d at 184.

¶ 15    Defendant argues his "appellate counsel was arguably ineffective for failing to argue that the [Act's] registration requirements violated [defendant's] due process rights."  Defendant contends:

> "The requirements and restrictions are neither narrowly tailored nor rationally related to the State's interest in protecting the public from sex offenders.  As a result, appellate counsel was arguably ineffective for failing to raise that issue and this Court should advance [defendant's] petition to the second stage."

¶ 16    Defendant further argues,

> "Here, appellate counsel's performance was objectively unreasonable for failing to argue that the [Act's] registration requirements violate [defendant's] due process rights.  This error prejudiced [defendant] because there is a reasonable probability that [defendant] would have been successful and, even [if] he was not successful on direct appeal, counsel failed to preserve the issue so that [defendant] could appeal to the higher courts."

¶ 17　Contrary to defendant's claims, as explained below, we do not find counsel was ineffective for failing to raise defendant's substantive due process challenge to the Act on direct appeal.

¶ 18　　　　　　　　　　　Ineffective Assistance of Counsel

¶ 19　Claims alleging ineffective assistance of counsel are governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (2004). *People v. Veach*, 2017 IL 120649, ¶ 29. "At the first stage of postconviction proceedings under the [Post-Conviction Hearing] Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *People v. Hodges*, 234 Ill. 2d 1, 17 (2009).

> " '[A] defendant must show that counsel's performance was objectively
> unreasonable under prevailing professional norms and that there is a "reasonable
> probability that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different." ' [Citation.] 'A "reasonable probability"
> is defined as "a probability sufficient to undermine confidence in the outcome." '
> [Citation.] 'A defendant must satisfy both prongs of the *Strickland* test and a
> failure to satisfy any one of the prongs precludes a finding of ineffectiveness.'
> [Citation.]" *Id*. at ¶ 30.

¶ 20　To be effective, "appellate counsel 'has no obligation to raise every conceivable argument which might be made, and counsel's assessment of what to raise and argue will not be questioned unless it can be said that his judgment in this regard was patently erroneous.' " *People v. Coleman*, 168 Ill. 2d 509, 523 (1995) (quoting *People v. Collins*, 153 Ill. 2d. 130, 140 (1992)). "If the issue underlying a defendant's claim of ineffective assistance of appellate counsel is not meritorious, the defendant could not have suffered prejudice due to appellate

counsel's failure to raise it. *Coleman*, 168 Ill. 2d at 523. "[A] court need not 'address both components of the inquiry if the defendant makes an insufficient showing on one.' " *People v. Montgomery*, 192 Ill. 2d 642, 671 (2000).

¶ 21 Our determination as to whether appellate counsel's performance was ineffective under the *Strickland* analysis necessitates a review of defendant's facial substantive due process challenge to the Act which he alleges counsel was deficient for not raising on direct appeal to determine if that claim is meritorious. *Coleman*, 168 Ill. 2d at 523.

¶ 22 It is important to highlight that, on direct appeal, appellate counsel did raise several constitutional challenges to the Act all of which were unsuccessful. As previously stated, appellate counsel argued on direct appeal the Act was unconstitutional in that it (1) imposed an *ex post facto* punishment in violation of the United States and Illinois Constitutions (U.S. Const. art. I, § 10, cl. 1) (Ill. Const. 1970, art. I, § 16); (2) constituted cruel and unusual punishment in violation of the eighth amendment of the United States Constitution (U.S. Const. amend. VII); and (3) violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). See *Thomas*, 2017 IL App (1st) 150403-U, ¶ 7. We again note, appellate counsel will not be deemed ineffective for failing to raise every conceivable argument on appeal and counsel's judgment in determining which issues to raise will not be questioned where that judgment was not patently erroneous. See *Coleman*, 168 Ill. 2d at 523.

¶ 23 Given our decision in defendant's direct appeal finding the Act does not constitute punishment and based on Illinois caselaw addressing similar constitutional challenges to the Act, we cannot say counsel's performance was objectively unreasonable under prevailing professional norms for failing to raise defendant's substantive due process claim on direct appeal nor do we find defendant suffered prejudice. See *Hodges*, 234 Ill. 2d at 17.

¶ 24 Substantive Due Process Challenge

¶ 25 Defendant argues his appellate counsel was ineffective for failing to argue the Act's reporting requirements violate substantive due process rights.

¶ 26 As recited in *Thomas*, 2017 IL App (1st) 150403-U, ¶ 4,

"The Act requires sexual predators and certain offenders to register in person with police when they change their address:

'If any person required to register under this Article lacks a fixed residence or temporary domicile, he or she must notify, in person, the agency of jurisdiction of his or her last known address within 3 days after ceasing to have a fixed residence and if the offender leaves the last jurisdiction of residence, he or she, must within 3 days after leaving register in person with the new agency or jurisdiction.' 730 ILCS 150/6 (West 2016).

Sexual predators and certain sex offenders must

'provide accurate information as required by the Department of State Police. Such information shall include a current photograph, current address, current place of employment, the sex offender's or sexual predator's telephone number, including cellular telephone number, the employer's telephone number, school attended, all e-mail addresses, instant messaging identities, chat room identities, and other Internet communications identities that the sex offender uses or plans to use, all Uniform Resource Locators (URLs) registered or used by the sex offender, all blogs and other Internet sites maintained by the sex offender or to which the sex offender has uploaded any content or posted any messages or information.' 730 ILCS 150/3(a) (West 2016)

In addition to the registration requirement, '[t]he person shall pay a $100 initial registration fee and a $100 annual renewal fee to the registering law enforcement agency having jurisdiction. The registering agency may waive the registration fee if it determines that the person is indigent and unable to pay the registration fee.' 730 ILCS 150/3(c)(6) (West 2016). Certain individuals 'adjudicated to be sexually dangerous and [are] later released or found to be no longer sexually dangerous and discharged, shall register for the period of his or her natural life. A sexually violent person or sexual predator shall register for the period of his or her natural life.' 730 ILCS 150/7 (West 2016).

> 'Any other person who is required to register under this Article shall be required to register for a period of 10 years after conviction or adjudication if not confined to a penal institution, hospital or any other institution or facility, and if confined, for a period of 10 years after parole, discharge or release from any such facility.' *Id.*

Failure by a defendant to comply with these registration requirements results in an extension of the registration period 'for 10 years.' *Id.* Additionally, not abiding by these requirements constitutes a Class 3 felony. 730 ILCS 150/10(a) (West 2016)." *Thomas*, 2017 IL App (1st) 150403-U, ¶ 4.

¶ 27    Defendant's claim of ineffective assistance of counsel on appeal is made only against appellate counsel and does not include trial counsel. Though defendant's facial substantive due process arguments could have been but were not raised by trial counsel before the trial court, we initially note that these arguments, nevertheless, were not forfeited and could have been raised by appellate counsel on direct appeal. With respect to this point, our supreme court has held review

of a constitutional challenge to a criminal statute may be raised for the first time on appeal and is not forfeited. *People v. Ligon*, 2016 IL 118023, ¶ 9.

¶ 28 Having concluding forfeiture would not have barred appellate counsel from raising defendant's substantive due process claim on direct appeal, we turn to the manner in which the constitutionality of a statute is to be determined in order to assess whether appellate counsel was ineffective for failing to present the substantive due process arguments on behalf of defendant on direct appeal.

¶ 29 It is well settled,

> "All statutes carry a strong presumption of constitutionality. [Citation.] To overcome this presumption, a party challenging a statute must clearly establish that it violates the constitution. [Citation.] This court will affirm a statute's constitutionality if the statute is reasonably capable of such an interpretation. [Citation.]" *People v. Johnson*, 225 Ill. 2d 573, 584 (2007).

¶ 30 "The burden is particularly heavy where, as here, the party raises a facial challenge, asserting that there is no circumstance in which the statute is valid." *People v. Pepitone*, 2018 IL 122034, ¶ 12. "A court will affirm the constitutionality of a statute *** if it is reasonably capable of such a determination and will resolve any doubts as to the statute's construction in favor of its validity." (Internal quotation marks omitted.) *People v. Wells*, 2019 IL App (1st) 163247, ¶ 46. Whether a statute is unconstitutional is a question of law reviewed *de novo*. *Johnson*, 225 Ill. 2d at 584.

¶ 31 Defendant argues the Act's reporting requirements violate constitutional guarantees of due process required under the fourteenth amendment of the United States Constitution and article 1, section 2, of the Illinois Constitution. "The fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article 1, section 2, of the Illinois Constitution (Ill.

Const. 1970, art. 1, § 2) both provide that no person shall be deprived of life, liberty, or property without due process of law." *Pepitone*, 2018 IL 122034, ¶ 13.

¶ 32    Defendant's claim is a substantive due process challenge. Substantive due process "bars governmental action that infringes upon a protected interest when such action is itself arbitrary;" in other words " 'the deprivation at issue is constitutionally invalid in and of itself, irrespective of the process leading up to it.' " *Id.* (quoting *People v. Cardona*, 2013 IL 114076, ¶ 17).

¶ 33    "Where a statute is challenged on due process grounds, the initial step of our analysis is to determine whether the statute restricts or regulates a liberty interest and whether that liberty interest is a fundamental right." *Pepitone*, 2018 IL 122034, ¶ 14. Where a statute infringes on a fundamental right, strict scrutiny is applied under which "the statute must serve a compelling governmental interest and be narrowly tailored to serve that interest." *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶ 71.

¶ 34    Where a fundamental right is not implicated, the rational-basis test is applied where "the statute must simply bear a rational relationship to any legitimate government interest." *Id*. ¶ 72. This "rational basis review requires us to ask two questions: (1) whether there is a legitimate state interest behind the statutes; and, if so, (2) whether the statutes are rationally related to that legitimate interest." *Id.* ¶ 81. "While the rational basis test is not toothless [citations], it remains highly deferential to the findings of the legislature." (Internal quotation marks omitted.) *Pepitone*, 2018 IL 122034, ¶ 17.

¶ 35    Here defendant claims the Act's regulations and restrictions cannot survive under rational basis or strict scrutiny review. We address each of defendant's arguments in turn.

¶ 36                    Fundamental Right and Strict Scrutiny

¶ 37    Defendant contends fundamental rights are implicated because the Act "*arguably constitutes punishment and, as a result*, arguably affects a person's fundamental rights to privacy

and to be free from arbitrary confinement" and, as such, the Act should be subject to a strict scrutiny analysis. (Emphasis added.) Defendant's argument for application of strict scrutiny hinges on the Act's registration requirements being a form of punishment—an issue this court resolved to the contrary in defendant's direct appeal.

¶ 38    In defendant's direct appeal we rejected defendant's constitutional challenges based on the Act constituting punishment stating:

> "Though our case law has repeatedly held registration requirements for sex offenders are not forms of punishment, defendant contends the expansion of the Act's registration requirements in 2013 tipped the Act over the line into a form of punishment. We find defendant fails to support this argument.
>
> The legislative intent behind the Act was not punitive, but rather 'to create an additional measure of protection for children from increasing incidence of sexual assault and child abuse.' [Citation.] Even when legislative intent is not to create a punitive scheme, the effect of a statute may be so punitive as to negate the legislature's intent. [Citation.]" *Thomas*, 2017 IL App (1st) 150403-U, ¶¶ 16-17.

¶ 39    To that end, we further found the Act had no punitive effect and explained that defendant had not shown how any amendments to the Act would alter this determination. *Id*. ¶¶ 17-25. Moreover, given the breadth of Illinois case law concluding the Act does not violate substantive due process including Illinois Supreme Court precedent by which this court is bound, we cannot find defendant's appellate counsel's decision not to raise the argument on direct appeal fell below an objective standard of reasonableness as necessary to be ineffective. See *Hodges*, 234 Ill. 2d at 17.

¶ 40   Furthermore, defendant acknowledges Illinois cases holding the Act "does not violate due process because it does not constitute punishment or affect a fundamental right" but argues those cases stemmed from our supreme court's decision in *People v. Malchow*, 193 Ill. 2d 413 (2003), finding the Act's requirements did not constitute punishment.  He notes *Malchow* did not look at the current Act's restrictions and requirements which he contends "are much more onerous" and do not "comply with substantive due process."

¶ 41   In *Malchow*, the court referenced its finding in *People v. Adams*, 144 Ill. 2d 381 (1991), upholding an earlier version of the Act having concluded the Act's registration requirement did not constitute punishment.  *Malchow*, 193 Ill. 2d. at 419.  There the court concluded "the legislature's intent in requiring registration of sex offenders was to create an additional measure of protection for children from increasing incidence of sexual assault and child abuse."  *Id*. at 420 (citing *Adams*, 144 Ill. 2d at 387).  The *Malchow* court similarly concluded the intent of the Sex Offender and Child Murderer Community Notification Law (Notification Law)[1] was to protect the public, not punish sex offenders and child murderers.  *Id*.  The court went on to analyze the seven factors enumerated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), for determining whether an act has a punitive effect and concluded the effect of the Notice Law was not punitive so as to negate the legislature's non-punitive intent.  *Malchow*, 193 Ill. 2d at 421-24. As noted above, this court, on direct appeal, undertook an identical analysis of the *Mendoza-Martinez* factors with respect to the updated version of the Act at issue in this case and similarly

---

[1] The Illinois Sex Offender Community Notification Law, 730 ILCS 152/101 *et seq.*, requires state police to maintain a sex offender database for the purpose of identifying sex offenders and making information about them available to persons specified in the statute and to the public and works in tandem with the Act.  See *People v. Jones*, 2018 IL App (1st) 151307, ¶ 52.

concluded the relevant version had no punitive intent or effect. See *Thomas*, 2017 IL App (1st) 150403-U, ¶¶ 17-25. We see no basis for deviating from *Malchow* and its progeny as defendant requests and cannot say appellate counsel was deficient for failing to raise this constitutional claim.

¶ 42    Furthermore, following *Malchow*, our supreme court in *In re J.W.*, 204 Ill. 2d 50, 67 (2003), stated the 2000 version of the Act's registration requirements did not affect a fundamental right. *Id*. Thereafter, the court in *People v. Cornelius*, 213 Ill. 2d 178, 203-04 (2004), concluded dissemination of the defendant's information over the internet under the Notification Law did not implicate a fundamental right necessitating strict scrutiny where the fundamental right claimed was damage to one's reputation though presented as invasion of privacy. *Id*.

¶ 43    We also note other Illinois appellate court cases similarly finding post-*Malchow* versions of the Act's statutory scheme is not punitive and does not affect a fundamental right. See *People v. Rodriquez*, 2019 IL App (1st) 151938-B, ¶ 21 (citing *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 58, and *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 77-78 (analyzing 2012 and 2014 versions of the Act respectively since *Malchow* and concluding, as those cases had, the changes to the Act did not render the Act punitive); see also *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 73-81 (commenting "the weight of authority shows that laws similar to the [2012 Act's statutory scheme] do not affect fundamental rights and concluding " ' the right to be free from a lifetime of burdensome, intrusive monitoring and restrictions' " is not a fundamental right warranting strict scrutiny review of the 2012 version of the Act); see also *Pollard*, 2016 IL App (5th) 130514, ¶¶ 32-37 (concluding the Act's statutory scheme does not impact a defendant's fundamental rights).

¶ 44    We are not persuaded by defendant's citation to *People v. Cetwinski*, 2018 IL App (3d) 160174, a case that delt with an eighth amendment as-applied constitutional challenge to the Act. As highlighted by defendant, the Third District in *Cetwinski* correctly points out "the [Act's] statutory scheme has been amended numerous times since *Malchow*, with additional requirements and restrictions placed upon sex offenders[.]" *Id*. at ¶ 51.  Notwithstanding, as this court pointed out in *People v. Jones*, 2018 IL App (1st) 151307, ¶¶ 52-53, our supreme court found the Act is not punitive in nature and repeatedly rejected claims to the contrary explaining we must follow the supreme court's precedent.  *Id.*

¶ 45    We also reject defendant's claim the Act violates a fundamental privacy right.  Defendant cites our supreme court's decision in *Cornelius*, 213 Ill. 2d 178 (2004), and acknowledges "prior decisions of Illinois courts have rejected the argument that a sex offender has a privacy interest in his registry information, or that the sex offender database unfairly infringes on the right to privacy[.]"  However, defendant contends these cases dealt with prior versions of the Act "at a time when our reliance on the internet and social media were nowhere near as prevalent" and involved versions of the Act that were "far more limited in scope[.]"

¶ 46    Ultimately, defendant's concern with the dissemination of his information, some of which he grants is already publicly available, is that "[h]e is branded a sex offender for the rest of his life, and the harm to his reputation, including his ability to maintain employment or function normally in society, is manifest by the severity and duration of the Act's restrictions."

¶ 47    While the Act may have changed as defendant suggests, our supreme court's rationale in *Cornelius* remains applicable.  There, the court was not persuaded by the defendant's arguments concerning internet access making the defendant's information more easily accessible concluding:

"defendant does not have a cognizable privacy interest in his sex offender registry information. Defendant 'engaged in conduct that lowered the privacy bar *** [as] [h]is acts spawned a criminal prosecution culminating in a public record that contains the challenged information.' " *Id*. at 196.

¶ 48    Moreover, in analyzing the defendant's substantive due process claim in *Cornelius*, the court determined the defendant's "fundamental right" argument was really an argument the dissemination of his information would damage his reputation. *Id*. at 204. As the quote above from defendant's brief reveals, this is the very argument defendant undertakes in this appeal despite it being rejected in *Cornelius*. The court in *Cornelius* concluded, "the right to be free from the shame, stigma and embarrassment resulting from a conviction for sexually abusing a child is not the kind of fundamental right contemplated by our constitution" and thus strict scrutiny in not applicable." *Id*. As to this issue, we are bound to follow the decisions of our supreme court. See *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 23. Where there is no identifiable basis for application of a strict scrutiny analysis of the Act, defendant's appellate counsel cannot be deemed deficient for failing to raise such a claim. See *Coleman*, 168 Ill. 2d at 523 (holding a claim of ineffective assistance of counsel fails where the issue underlying that claim is not meritorious such that no prejudice was suffered due to counsel's failure to raise it).

¶ 49                                   Rational Basis Test

¶ 50    Having found no fundamental right implicated by the Act so as to trigger strict scrutiny review, we turn to defendant's allegation appellate counsel was deficient for not arguing on appeal the Act fails under the rational basis test. Defendant argues that even if a fundamental right is not implicated by the Act, its "onerous restrictions *** do not achieve the government[']s

interest in protecting the public from sex offenders." Defendant does not contend the Act serves no legitimate interest, only that its restrictions do not achieve that interest.

¶ 51    The test here is whether the Act's restrictions are "rationally related to the legitimate state interest." See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 81; see also *Pepitone*, 2018 IL 122034, ¶ 19 (explaining that where the defendant concedes a legitimate interest by the legislature, as is the case here, the only dispute is whether the requisite constitutional nexus exists—a rational relation between the Act's aim and its means).

¶ 52    Defendant specifically argues "the vast amount of information collected and disseminated by [the Act] is not rationally related to the goal of protecting the public." However, "the rational basis test does not require narrow tailoring; it only requires rationality." *Id*. at ¶ 30. Nor does the rational basis test require the means be the best means of accomplishing the legislature's intent. *Pollard*, 2016 IL App (5th) 130514, ¶ 42. "As long as there is a conceivable basis for finding a rational relationship, the law will be upheld." (Internal quotation marks omitted.) *People v. Parker*, 2016 IL App (1st) 141597, ¶ 80.

¶ 53    Defendant has not demonstrated the Act's registration and notification requirements could be found to be devoid of any rational basis as would be necessary for his ineffective assistance of counsel argument to have merit. Moreover, given that Illinois courts have repeatedly held the Act's provisions do not violate substantive due process under rational basis review we cannot say appellate counsel was objectively unreasonable in not making this claim. See *Cornelius*, 213 Ill. 2d at 204-05 (finding under the rational basis test, the notification provisions of the 2002 version of the Act bore a rational relationship to the purpose of the Act and Notification Law—to assist law enforcement and to protect the public from sex offenders— stating "we find nothing unreasonable in the methods of serving the intended purposes of the statutes ***[concluding] there is a rational relationship between the disclosure of sex offender

registration information via the Internet and the goals of protecting the public and assisting law enforcement."); *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84 (finding rational basis for the Act and Notification Laws to "help law enforcement and private individuals keep track of sex offenders by providing information about their presences and offenses."); *In re A.C.*, 2016 IL App (1st) 153047 ¶¶ 78-82 (finding the Act's registration and notification requirements rationally related to a legitimate state interest even where a juvenile offender was at issue).

¶ 54    This court is not persuaded that any of the changes to the Act highlighted by defendant since these cases finding a rational basis nexus would change this determination.  Defendant argues,

> "now, a sex offender's contact information, email and internet address, employment information, and school history are made available to school boards, colleges, libraries, public housing authorities, and volunteer organizations dealing with children."

¶ 55    Defendant also notes that now, an offender's license plate numbers as well as identifying marks on their body can be obtained upon request.  Information collected includes an offender's contact information, his employer's contact information, information related to his internet usage, the terms and conditions of his parole, and specific information about his offenses and the complaining witnesses.  We cannot conclude nor does defendant argue how any of these expansions are not rationally related to the government's legitimate interest in protecting the public from sex offenders.  This is particularly true with respect to an offender's digital footprint because, as defendant points out, we live in a time when our reliance on the internet and social media is more prevalent.

¶ 56    Defendant also argues there can be no rational basis nexus under the Act because most convicted sex offenders do not sexually reoffend citing various studies including published

findings from the Sex Offender Registration Task Force established by the General Assembly and interpreted by the Third District in *People v. Tetter,* 2018 IL App (3d) 150243, ¶ 78, as calling into question the efficacy of the Act's statutory scheme.

¶ 57    However, this argument cannot succeed. As stated by our supreme court in *Pepitone* in its discussion of the rational basis test,

> "The legislature's judgments in drafting a statute are not subject to judicial fact finding and may be based on rational speculation unsupported by evidence or empirical data. [Citation.] If there is any conceivable set of facts to justify the statute, it must be upheld. [Citation.] This court will not second-guess the wisdom of the legislative enactments or dictate alternative means to achieve the desired result. [Citation.]" (Internal quotation marks omitted.) *Pepitone*, 2018 IL 122034, ¶ 17.

¶ 58    Furthermore, as the *Pepitone* court pointed out in response to the defendant's citation to empirical studies regarding recidivism rates of sex offenders as argument for the required constitutional nexus not having been met,

> "The problem for the defendant is that, regardless of how convincing the social science may be, the legislature is in a better position than the judiciary to gather and evaluate data bearing on complex problems." (Internal quotation marks omitted.) *Id*. at ¶ 24.

¶ 59    As Illinois caselaw does not support defendant's substantive due process argument under the rational basis test, we do not find defendant's appellate counsel's decision not to raise the argument on direct appeal could have fallen below an objective standard of reasonableness. See *Hodges*, 234 Ill. 2d at 17. Accordingly, we find defendant failed to make the required showing

of a gist of a constitutional claim of ineffective assistance of appellate counsel in his

postconviction petition.

¶ 60                              CONCLUSION

¶ 61    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 62    Affirmed.